[No. E046559. Fourth Dist., Div. Two. Apr. 2, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
KARAMPAL SINGH NAKAI, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified
for publication with the exception of part III.

## COUNSEL

Jeffrey D. Schwartz; and Marie L. Kayal for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MILLER, J.**—A Riverside County jury found defendant, Karampal Singh Nakai, guilty of two counts of attempting to send harmful matter to a minor with the intent to seduce the minor. (Pen. Code, §§ 664, 288.2, subd. (a).)[1] The jury found defendant not guilty of attempting to commit a lewd or lascivious act with a child under the age of 14 years. (§§ 664, 288, subd. (a).) The trial court granted defendant three years of formal probation, with the conditions that defendant (1) serve 270 days in the custody of the Riverside County Sheriff, on weekends; and (2) register as a sexual offender for the rest of his life (§ 290).

Defendant makes three contentions. First, defendant asserts that the trial court erred by not instructing the jury on the lesser included offense of attempting to distribute harmful matter to a minor. (§ 313.1, subd. (a).) Second, defendant contends that the trial court erred by not excluding the Yahoo! chat dialogue between defendant and the purported minor, because it was a confidential communication. (§ 632.) Third, defendant asserts that Riverside County did not have jurisdiction over the case because defendant's criminal acts occurred in San Bernardino County, i.e., the venue was improper. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Coleen is a member of Perverted Justice, and was 35 years old at the time of defendant's trial. Perverted Justice members create Internet profiles of 12- or 13-year-old children, and use those profiles in Internet chat rooms[2] to find adults who solicit children online. In other words, members of Perverted Justice are adults who act as though they are 12- or 13-year-old children, while chatting online with adults who believe that the Perverted Justice member is a child. On January 3, 2006, Coleen entered a regional chat room for California[3]—Coleen was chatting from her computer in Michigan. Coleen used the screen name dark_dana_666. While in the chat room, Coleen was contacted by defendant, who used the screen name gavy_nakai.

---

[1] All further statutory references will be to the Penal Code, unless otherwise indicated.

[2] A chat room is a social Internet site. When a computer user enters a chat room, the user's computer screen displays a list of names of other people that are in the chat room and the ongoing chat dialogue that is taking place between the people in the chat room. Chat rooms can be public or private. To enter a private chat room, a computer user clicks on the name of another person in the chat room, from the list of names, and then an independent window pops up inviting the other person to chat privately—outside of the ongoing chat dialogue. The private chat then takes place in the independent window, so as to remain private.

[3] Chat rooms can have specific topics or be for people in a specific area. For example, a chat room may be directed towards the topic of baseball, or a chat room may be directed towards people who live in California. A chat room that is directed towards a specific geographical location is referred to as a "regional chat room." A regional chat room does not have a specific

While chatting, Coleen wrote to defendant that she was a 12-year-old female in Riverside, California. Defendant wrote to Coleen that he was a 20-year-old male in Rancho Cucamonga, California. Defendant asked Coleen if she had a boyfriend and Coleen responded that she did not, but that she previously had a boyfriend. Defendant asked Coleen if she had a camera or a picture of herself. Coleen wrote that she did not have a camera. Defendant then asked Coleen to tell him what she and her ex-boyfriend did together. Coleen responded, "We just made out and did it once." Defendant asked Coleen "[h]ow big" her ex-boyfriend's "thing" was. Coleen responded that her ex-boyfriend's penis was less than seven inches. Defendant wrote that his penis was nine inches. Coleen wrote that she had "never seen one that big." Defendant offered to show Coleen his penis via his Internet camera (Webcam).[4] Defendant then sent Coleen an image of his erect penis. Coleen responded, "[I]t's gigantic." Defendant again informed Coleen that his penis was nine inches long "and almost two inch[es] thick."

Defendant then wrote to Coleen, "What [would] you like to do with my dick? It's secret, girl. Will you suck my dick?" Coleen responded that her mouth was not large enough, and it "would hurt so bad." Defendant asked Coleen if she would "like to ride on it." Coleen again expressed concern that it would "hurt." Defendant wrote, "You will love it." Defendant asked Coleen, "See my dick again?" and "Are you rubbing yourself?"

Defendant requested that Coleen and he speak on the telephone. Coleen wrote that she could not speak on the telephone because her cell phone was charging. Defendant again requested to speak to Coleen on the telephone, but Coleen refused because her "mother" would hear. Defendant sent Coleen images of a naked woman by turning his Webcam towards the pornographic picture on his computer monitor—essentially sending Coleen an image of his computer screen. Defendant and Coleen made plans to speak on the telephone the next day.

As the chat dialogue progressed, defendant wrote, "I am so hot now. I gotta go jack-off now." He then wrote that he would be thinking about Coleen while "jacking off." Coleen wrote that she would be staying online, so defendant wrote that he would "jack-off later." Defendant then asked Coleen,

---

topic of conversation assigned to it, rather, it is a means for people in a defined geographical area to chat with one another about a variety of topics.

[4] A Webcam allows images to be seen during a chat conversation. If a user sends images from a Webcam, then a window will pop up on the computer screen of the person receiving the images. The image window is typically next to the chat window, so that the images can be seen while the parties continue their chat. The images that defendant sent Coleen were "streaming images," which are like a live movie; however, the Webcam exhibits presented in court were "screenshots" of Coleen's computer, i.e., still photographs of Coleen's computer monitor, which reflected the images defendant sent to Coleen.

"Do you have hair on your pussy?" Coleen responded, "Um, yeah, a little." Defendant wrote, "Oh, hmm, nice" and asked, "Do you like [it] when some[one] lick[s] it?" Coleen wrote that she had "never [done] that" and asked if it hurt. Defendant responded, "Licking don't hurt." Defendant then wrote, "I can lick hard with my fingers in it."

Coleen commented that she liked the photograph included in defendant's online profile. Defendant responded, "Girl with me. I fuck her in her ass all the time." Defendant again requested that Coleen call him on the telephone. At that point, Coleen contacted Amanda, another member of Perverted Justice, via online instant messenger. Amanda is able to alter her voice to sound like a young person. Amanda called defendant. On the telephone, defendant asked Amanda, "What's up." Amanda responded, "Nothing." Defendant asked Amanda how she obtained her cell phone. Amanda said that her mother bought it for her. Defendant then said, "You're just a baby." Defendant asked Amanda if she "liked what [she] saw." Amanda responded, "I guess I did." Defendant asked Amanda if she "would lick it," and Amanda said she "could if he wanted [her] to" and then Amanda abruptly ended the telephone conversation.

Coleen then wrote to defendant, in the private chat room, "I'm so sorry. My mom called me. She was coming in. Are you mad? I'm sorry." Defendant wrote that he was not mad, and that he wanted Coleen to call him the next day. Defendant then wrote, "[T]ell me how you want [a] guy to do sex with you." Coleen wrote that she did not engage in cybersex.[5] The following chat ensued:

"[Defendant]: Do you like to kiss first?

"[Coleen]: . . . Yeah, I do.

"[Defendant]: Then what [do] you want [a] guy to do after he kiss[es] you?

"[Coleen]: I don't know. Make-out, I guess.

"[Defendant]: Ok. You want him to suck your tits?

"[Coleen]: . . . Yeah, sure.

"[Defendant]: Then what [do] you w[an]t him to do? [¶] . . . [¶]

"[Defendant]: Do you like to lick his cock first, or you want me to lick your pussy first?

---

[5] Cybersex is a sexual dialogue that takes place online.

"[Coleen]: I don't know. Whatever is cool."

Defendant asked Coleen where she engaged in sex with her ex-boyfriend. Coleen wrote that she had sex in her room while her mother was at work. Defendant wrote that he would "love to have sex." Coleen asked, "[W]ith me?" Defendant responded, "What [do] you think?" Coleen responded that she was afraid defendant's penis "would hurt." Defendant wrote, "We can just lick each other, oral." Defendant then asked, "Do you rub yourself?" Coleen wrote that she did. Defendant asked, "Did you cum?," and Coleen wrote, "Yeah." Defendant asked, "Tell me, did you cum? Baby, oh, yeah. Did you taste it? Lick your fingers?" Coleen responded, "No." Defendant wrote, "I'm going to cum, ok?" Defendant then wrote, "I am going to think that I am cumming on your pussy." Defendant and Coleen made plans to speak on the telephone the next day, and wrote "good night" to one another.

The next day, on January 4, 2006, Coleen wrote to defendant, online, that she was sorry for not telephoning defendant, but that she had been at a friend's house, without defendant's telephone number, and therefore, had been unable to call. Defendant wrote that it was okay that Coleen did not call because he "was scared [a] little" due to Coleen being "too young." The following dialogue then occurred:

"[Defendant]: I can get in trouble.

"[Coleen]: Why can you?

"[Defendant]: You're not 18.

"[Coleen]: Oh, but I'm mature. I told you I was.

"[Defendant]: You d[o]n't get it.

"[Coleen]: Get what?

"[Defendant]: You're not 18. I can get in trouble for that. You know that. People [are going to] call me [a] child abuser.

"[Coleen]: I'm not telling if you ain't. . . . I'm not a child.

"[Defendant]: You're 13. Hello.

"[Coleen]: I'm almost 13, but that don't matter. [¶] . . . [¶] I'm mature and not like other girls my age, so it don't matter.

"[Defendant]: Age matters. You gotta understand. [¶] . . . [¶] . . . What if your mom finds out that you talked to me. I will be in big trouble."

Defendant asked Coleen to give him her telephone number, but Coleen refused. Coleen wrote that she was afraid her mother would hear the telephone ring if defendant called. Coleen wrote that defendant could come to her house when her mother was working. Defendant responded that he was "too scared." Defendant then questioned, "You didn't give me your [telephone] number, but you will give me your address?" Coleen wrote that her mother would be at work from 5:00 p.m. until 5:00 a.m. on that upcoming Saturday, and therefore, defendant could come to her house at 6:00 p.m. Defendant wrote, "Man, what if I got caught[?] I will go to jail."

After more chatting, defendant asked, "Hey, did your [ex-boyfriend] pop your cherry?" Coleen wrote that he did. Defendant asked Coleen, "Did you suck his dick?" Coleen responded that she did. Defendant asked Coleen, "Did he lick your pussy?" Coleen responded that he did not. Defendant wrote, "I will lick it right, yeah."

The following day, January 5, 2006, Coleen wrote that she could not call defendant because a friend was visiting at Coleen's house. Defendant asked Coleen for her address. Coleen gave defendant the address of a house in Mira Loma, where the Riverside County Sheriff's Department was planning a sting operation. Coleen asked defendant to promise not to come to the house until Saturday. Coleen asked defendant to bring a scary movie or a pornographic movie for them to watch on Saturday. Defendant again expressed concern about going to Coleen's house, because Coleen was a minor. Coleen suggested that they watch The Matrix (Warner Bros. 1999). Defendant responded, "We can make our own movie." Defendant asked, "Do you have [a] naughty dress?" Coleen wrote, "I got a short skirt." Defendant responded, "How about [you] leave that off?" Coleen asked defendant what he would be wearing, and he wrote, "Nothing." Coleen asked if defendant would be nude while watching The Matrix, and defendant wrote, "Yeah."

Defendant and Coleen made plans for defendant to arrive at 7:00 p.m. on Saturday, January 7, 2006. Coleen asked defendant to bring condoms to the house, because she was afraid that she might become pregnant. Defendant responded, "Ok." Defendant then sent Coleen a Webcam image of a woman whose breasts were exposed. The Webcam image was created by defendant focusing his Webcam on the pornographic image on his computer monitor. Defendant then showed Coleen, via Webcam, images of a woman orally copulating a man. Defendant then sent Coleen, via Webcam, an image of his penis. Coleen wrote that she had to leave the chat conversation. Defendant wrote that he would "buy some condoms." Members of Perverted Justice

typically ask people, such as defendant, to bring items with them, e.g., condoms or a movie, to verify that the person arriving at the house was the same person with whom they were chatting online.

On January 7, 2006, Riverside County Sheriff's Investigator Peralta was participating in an "Internet decoy sexual predator sting," in Mira Loma, which is an unincorporated area of Riverside County. The sting took place over a three-day period at a house on Riverboat Drive (the sting house). The sting house was located approximately three to five miles from the closest freeway off-ramp. Over the three-day period "a lot of men" came to the sting house. Typically, suspects were arrested after exiting the sting house; however, some men were arrested before entering the sting house, because another man was already in the sting house.

On January 7, at approximately 3:00 p.m., Investigator Peralta saw defendant sitting in a vehicle near the sting house. Defendant had a view of the sting house from his vehicle. Investigator Peralta watched defendant sit in his car eating chili-cheese fries. After approximately five or 10 minutes, Investigator Peralta approached defendant. Investigator Peralta asked defendant, "What are you doing in the area?" Defendant responded, "Just sitting here eating lunch." Investigator Peralta asked defendant if he lived in the area, and defendant said, "No." Investigator Peralta asked if defendant knew anyone in the area, and defendant said, "No." At that point, Investigator Peralta asked defendant to step outside of his vehicle. Defendant gave Investigator Peralta permission to search his vehicle. In the center console of the vehicle, Investigator Peralta found directions to the sting house. Investigator Peralta did not find condoms or a pornographic movie when searching defendant or defendant's vehicle.

## DISCUSSION

### I. *JURY INSTRUCTION*

#### A. *Facts*

In counts 2 and 3, defendant was charged with attempting to send or exhibit harmful matter to a minor with the intent of arousing defendant or the minor, and with the intent of seducing the minor. (§ 288.2, subd. (a).) Defendant's trial attorney moved the trial court to instruct the jury, in regard to counts 2 and 3, on the lesser offense of knowingly sending or exhibiting harmful material to a minor. (§ 313.1, subd. (a).) Defendant's trial attorney argued that the lesser offense instruction should be given because it was not clear from the evidence whether defendant had the intent to seduce the minor, e.g., defendant did not bring condoms or walk towards the sting house.

The trial court denied the request for the instruction on the lesser offense. The trial court's ruling was based upon the following reasoning: The Yahoo! chat dialogue showed that defendant repeatedly wrote about engaging in sexual intercourse with dark_dana_666. The trial court concluded that the Yahoo! chat dialogue constituted substantial evidence that defendant's sole intent was to seduce dark_dana_666. The trial court noted that no evidence was presented that defendant harbored a different intent.

### B. *Analysis*

Defendant contends that the trial court erred by not sua sponte instructing the jury on knowingly sending or exhibiting harmful material to a minor (§ 313.1, subd. (a)), as a lesser included offense of sending or exhibiting harmful material to a minor with the intent of arousing defendant or the minor, and with the intent of seducing the minor (§ 288.2, subd. (a)). We disagree.

■ " 'We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense. [Citation.] A trial court must instruct the jury sua sponte on a lesser included offense only if there is substantial evidence, " 'that is, evidence that a reasonable jury could find persuasive' " [citation], which, if accepted, " 'would absolve [the] defendant from guilt of the greater offense' [citation] *but not the lesser*" [citation].' [Citation.] '[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]' [Citation.]" (*People v. Licas* (2007) 41 Cal.4th 362, 366 [60 Cal.Rptr.3d 31, 159 P.3d 507].)

For purposes of this opinion, we will assume without deciding that section 313.1, subdivision (a), constitutes a necessarily included offense of section 288.2, subdivision (a). (See *People v. Jensen* (2003) 114 Cal.App.4th 224, 244 [7 Cal.Rptr.3d 609] (*Jensen*) [concluding that § 313.1 is a lesser included offense of § 288.2, subd. (b)].)

During closing arguments, the prosecution argued that the jury should find defendant guilty of counts 2 and 3 based upon defendant's acts of (1) sending Coleen streaming Webcam images of defendant masturbating, and (2) sending Coleen streaming Webcam images of a naked female orally copulating a male.

### 1. *Count 2*

Our review of the record reveals that defendant sent images of his erect penis to Coleen during their first chat. While sending the images of his penis,

defendant asked Coleen, "Are you rubbing yourself?" Defendant asked Coleen if she would "ride" on his penis. When Coleen expressed concern that defendant's penis would hurt her, defendant replied, "You will love it." After speaking on the phone with Amanda, defendant wrote to Coleen and asked, "Do you rub yourself?" Coleen wrote, "Yeah." In response, defendant wrote, "Tell me, did you cum? Baby, oh, yeah. Did you taste it? Lick your fingers?" Defendant then informed Coleen that he was "going to cum." Defendant wrote, "I am going to think that I am cumming on your pussy."

The record reflects that defendant sent images of his erect penis to Coleen with the intent of arousing himself, as evinced by his orgasm. The record further demonstrates that defendant sent images of his erect penis to Coleen with the intent of seducing dark_dana_666, as evinced by his query of whether Coleen was "rubbing" herself, and his comment that she would "love" "riding" his penis. Nothing in the Yahoo! chat dialogue reflects that defendant sent the images of his penis to Coleen for a reason other than arousing himself and seducing dark_dana_666. Accordingly, based upon the foregoing evidence, we agree with the trial court's conclusion that there is no evidence that a reasonable jury could find persuasive that, if accepted, would absolve defendant from guilt of the greater offense but not the lesser, because the evidence only demonstrates defendant's combined intents to arouse and seduce.

Defendant argues that a jury may have found that he did not have the intent to seduce dark_dana_666 because he did not bring a condom to the sting house. We do not find defendant's argument persuasive because we are looking at defendant's intent at the time he sent Coleen the images of his penis, not his intent at the time he went to the sting house.

Defendant relies on *Jensen* to support his argument that the lesser included offense instruction should have been given. In *Jensen*, a police officer created an online profile identifying himself as a fictitious 13-year-old boy. (*Jensen, supra*, 114 Cal.App.4th at p. 227.) The officer chatted with the defendant in an online private chat. (*Id.* at pp. 227–228.) The defendant asked the officer, " 'do you shoot far when you cum' "; " 'how often do you jack off' "; " 'how big is your cock' "; and " 'are u hard right now.' " (*Id.* at p. 228.) The defendant told the officer that the two could " 'fuck 'till our heart's content.' " (*Ibid.*) The defendant asked the police officer "if he was 'hard right now' and touching himself." The police officer replied affirmatively. (*Ibid.*) The defendant sent the officer several photographs, including (1) a man who was being simultaneously sodomized and orally copulated; (2) the defendant, naked, with an erect penis; and (3) the defendant fully clothed. (*Id.* at pp. 227–228.) The defendant suggested that the officer move in with the defendant and his boyfriend. (*Id.* at pp. 230–231.) Eventually the officer arrested the defendant.

(*Id.* at pp. 234–235.) The defendant was charged with 10 counts of attempted distribution or exhibition of harmful matter to a minor over the Internet (§§ 664, 288.2, subd. (b)). (*Jensen,* at p. 235.)

On appeal, the defendant contended that the trial court erred by not instructing the jury on the lesser included offense of attempted misdemeanor distribution of harmful matter to a minor. (§ 313.1, subd. (a).) (*Jensen, supra,* 114 Cal.App.4th at p. 243.) Before reaching this contention, the reviewing court concluded that the defendant's convictions had to be reversed because the trial court incorrectly instructed the jury on the element of "intent to seduce." (*Id.* at pp. 240–241.) Nevertheless, the reviewing court went on to address the issue of the lesser included offense, in order to aid the trial court. (*Id.* at p. 241.) The reviewing court concluded that section 313.1 was a lesser included offense of section 288.2, subdivision (b). (*Jensen,* at p. 244.) The reviewing court further concluded that the element of "intent to seduce a minor" was defined as "entic[ing] the minor to engage in a sexual act involving physical contact between the perpetrator and the minor." (*Id.* at pp. 240–241.) In other words, enticing a minor to masturbate herself would not satisfy the "intent to seduce" element of section 288.2, subdivision (b). The appellate court further held that a reasonable jury could have concluded that the defendant distributed the harmful matter to the police officer solely for the purpose of arousing himself, and not with a secondary intent of having physical contact with the purported minor. (*Jensen,* at pp. 244–245.) Therefore, the appellate court concluded that, on remand, the trial court must instruct the jury on the lesser included offense, if the offense is not time-barred. (*Id.* at p. 245.)

Defendant asserts that his acts were similar to those in *Jensen,* and therefore, the trial court should have instructed the jury on the lesser included offense. In other words, defendant contends that the evidence that he intended to entice dark_dana_666 into having physical contact with him was questionable, because he did not bring condoms to the sting house and he arrived four hours early.

As defendant was sending Coleen live images of his erect penis, he asked her, "What [would] you like to do with my dick?" and "Will you suck my dick?" Defendant asked Coleen, "Would you like to ride on it?" Coleen asked defendant if his penis would hurt her, and defendant responded, "You will love it." When chatting about oral copulation, defendant wrote to Coleen, "I can lick hard with my fingers in it." During the course of the online chat, defendant repeatedly asked Coleen to call him.

As the online chat progressed, defendant asked Coleen where she had sex with her ex-boyfriend. Coleen wrote that she and her ex-boyfriend had sex at

her house, when her mom was at work. Defendant responded, "[T]hat's good," and, "I will love to have sex." Coleen expressed concern that defendant's penis was too large, and defendant responded, "We can just lick each other, oral." When Coleen asked if oral copulation would hurt, defendant wrote, "You will love it." Defendant then asked Coleen if her mom would be "working tomorrow." Coleen responded that her mom only worked until 6:00, but that she would be working all weekend. Defendant wrote, "We can try. Yeah, call me tomorrow. We will decide." Defendant assured Coleen that he had a car, and instructed Coleen, "Give me your address tomorrow."

The foregoing evidence reveals that defendant had an intent to entice dark_dana_666 to engage in physical sexual acts with him, be it sexual intercourse or oral copulation. Defendant assured Coleen that she would "love" "riding" his penis. When Coleen expressed concern about intercourse being painful, defendant suggested an alternative plan of mutual oral copulation. Defendant then tried to arrange the logistics of meeting with dark_dana_666 by (1) asking when her mother would be at work; (2) making plans to speak on the telephone; and (3) making plans to obtain dark_dana_666's address. The record does not support a conclusion that defendant only wanted to entice dark_dana_666 to masturbate herself. If defendant was not interested in meeting with dark_dana_666, then he would not have needed to assure her that he had a car, or create an alternative plan of mutual oral copulation. In other words, we are not persuaded that the evidence regarding the element of an "intent to seduce" is questionable, and therefore are not persuaded that the trial court should have instructed the jury on the lesser included offense.

■ In sum, there was no substantial evidence that defendant committed only the lesser offense, and not the greater, and therefore, the trial court did not err by not instructing the jury on section 313.1, subdivision (a).

### 2. *Count 3*

While chatting with Coleen, defendant suggested that the two make a movie, and asked if Coleen had a "naughty dress." When Coleen wrote that she had a short skirt, defendant suggested that she "leave that off." Defendant wrote that he would not wear anything, even if they were watching The Matrix. Defendant and Coleen made plans for defendant to come to Coleen's house at 7:00 p.m. Coleen wrote that the two might not be able to engage in sexual intercourse, due to the large size of defendant's penis. Defendant sent Coleen images of a woman orally copulating a man. Coleen wrote, "She had his thing in her mouth all the way. [Oh my God]." Defendant then sent

Coleen more images of his penis.[6] Defendant wrote, "I will buy some condoms" and asked, "Will you take my clothes off?"

The foregoing evidence shows that defendant sent the images of a woman orally copulating a man with the intent of arousing himself as evinced by exhibit No. 4, which shows defendant gripping his erect penis. The image in exhibit No. 4 was sent to Coleen after defendant sent Coleen the oral copulation images. The evidence delineated *ante* further demonstrates that defendant sent the oral copulation images to Coleen with the intent of seducing dark_dana_666, as evinced by his plans to (1) meet dark_dana_666; (2) buy condoms; and (3) be naked while at dark_dana_666's house. Nothing in the record suggests that defendant sent the oral copulation images to Coleen for a reason other than arousing himself and seducing dark_dana_666. Accordingly, based upon the foregoing evidence, we agree with the trial court's conclusion that there is no evidence that a reasonable jury could find persuasive which, if accepted, would absolve defendant from guilt of the greater offense but not the lesser, because the evidence only demonstrates defendant's combined intents were to arouse and seduce.

Defendant argues that the lesser included offense instruction should have been given because, like the *Jensen* case, the evidence regarding the intent to seduce is questionable. Defendant essentially argues that because the evidence of his intent only involved "words," it is not clear that defendant had the intent to seduce dark_dana_666, i.e., entice her. We do not find defendant's argument persuasive because defendant made plans to meet dark_dana_666, made plans to buy condoms, and wrote that he would be naked at dark_dana_666's house. Additionally, defendant sent images of his erect penis soon after sending the oral copulation images and making plans to meet with dark_dana_666. Consequently, the evidence of defendant's intent is not based upon mere "words." Exhibit No. 4, the image of defendant gripping his erect penis, illustrates defendant's intent, and goes beyond simple "words." Further, defendant's act of driving to the sting house, even though he arrived four hours before the planned meeting time, is further evidence— not involving "words"—that defendant sent the oral copulation images to Coleen for the purpose of seducing dark_dana_666.

### 3. *Harmless Error*

To the extent an error could be found in the trial court's decision to not instruct the jury on the lesser included offense, the error was not prejudicial.

When analyzing whether a defendant was prejudiced by a trial court's erroneous decision not to instruct on a lesser included offense, we must

---

[6] Exhibit No. 4 is a screenshot of Coleen's computer monitor, which includes a clear image of a man gripping his erect penis with his hand.

decide if it is reasonably probable that the jury would have found the defendant guilty of only the lesser offense. (*People v. Leal* (2009) 180 Cal.App.4th 782, 792 [103 Cal.Rptr.3d 351].)

The lesser included offense provides: "Every person who, with knowledge that a person is a minor, or who fails to exercise reasonable care in ascertaining the true age of a minor, knowingly sells, rents, distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by any means, including, but not limited to, live or recorded telephone messages, any harmful matter to the minor shall be punished . . . ." (§ 313.1, subd. (a).)

In closing argument at the trial court, and oral argument at this court, defendant contended that he was "role-playing" in the chat room. In short, defendant's theory of the case is that the evidence shows he was engaged in a role-playing game, in which he knowingly chatted with an adult who was pretending to be a child. The problem with this argument, in relation to the lesser included offense, is that defendant's theory of the case negates defendant's intent to send harmful matter to a minor, while the difference between the greater offense and lesser offense is that the lesser offense omits the intent to arouse. Defendant did not argue that he lacked the intent to arouse. Accordingly, it is not reasonably probable that the jury would have found defendant guilty of only the lesser offense, because the critical element between the lesser offense and the greater offense was not disputed.

## II. *EXCLUSION OF EVIDENCE*

### A. *Facts*

Defendant filed a motion to suppress all evidence related to the Yahoo! chat dialogues. Defendant asserted that Coleen recorded his private online chats without any warning to defendant. Defendant argued that the chat dialogue evidence must be suppressed because California law requires that both parties consent to a communication being recorded, and defendant did not consent to the chat dialogue being recorded. (§ 632.)[7]

---

[7] The pertinent subdivisions of section 632 provide:

"(a) Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation

In the prosecution's opposition to the motion, the prosecutor argued that Proposition 8[8] abrogated section 632, because Proposition 8 required that relevant evidence not be excluded from a criminal proceeding. Alternatively, the prosecutor argued that the Yahoo! chat dialogues were not protected by section 632 because it was not objectively reasonable to believe that the Yahoo! chat dialogues were not being recorded, due to the dialogues being sent and received in a recorded format, i.e., writing.

In defendant's reply to the prosecution's motion, defendant argued that section 632 was not abrogated by Proposition 8, because section 632 was reenacted by a two-thirds majority of the Legislature following the passage of Proposition 8. Therefore, defendant asserted that the prosecution's Proposition 8 argument was without merit, and the Yahoo! chat evidence must be suppressed. Additionally, defendant argued that it was objectively reasonable to believe that the Yahoo! chat dialogues were confidential communications given the "intimate/sexual nature of the chat logs." Further, defendant asserted that chat logs are different than e-mails or text messages because when the chat participants close the chat windows then "the information or data is lost," unlike an e-mail or text message which can be saved and viewed years later.[9]

---

of this section or Section 631, 632.5, 632.6, 632.7, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

"(b) The term 'person' includes an individual, business association, partnership, corporation, limited liability company, or other legal entity, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication.

"(c) The term 'confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

"(d) Except as proof in an action or prosecution for violation of this section, no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section shall be admissible in any judicial, administrative, legislative, or other proceeding."

[8] Proposition 8, which appeared on the June 1982 primary election ballot, added section 28, former subdivision (d) (now subd. (f)(2)), to article I of the California Constitution; that section provides in part: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding . . . ." (See generally *In re Lance W.* (1985) 37 Cal.3d 873, 885–886 [210 Cal.Rptr. 631, 694 P.2d 744] [discussing Prop. 8].)

[9] Our copy of the clerk's transcript is missing the final page of defendant's reply to the prosecution's opposition to the motion to suppress; therefore, we have inferred that foregoing was defendant's argument for distinguishing chat logs from e-mails or text messages.

On May 30, 2008, at the hearing on the motion to suppress, the prosecutor read a portion of the Yahoo! chat privacy policy into the record: " '[w]e believe it is necessary to share information in order to investigate, prevent, or take action regarding illegal activities, suspected fraud situations involving potential threats to the physical safety of any person, violations of Yahoo!'s terms of use or otherwise required by law.' " Further, the prosecutor said, "[T]here is an area that talks about, 'Is Yahoo! messenger even private?' There's seven or eight paragraphs that state it is not. It specifically states that 'Messenger is intended to allow you to engage in private conversations, however, it's not guaranteed that your conversation will never be available to others.' [¶] It states that 'As with any conversation, the person you correspond with might share the content of your conversation with others. Outside parties might intercept the conversation[] as it crosses the internet.' [¶] It also states that 'Yahoo! Messenger allows you to archive, print, and save messages so you can retain your instant mess[enger] communications.' [¶] It states . . . 'Please be aware that even if you choose not to save your messages, those with whom you have conversations might choose to do so.' " Based upon the foregoing Yahoo! privacy policy, the prosecutor argued that defendant consented to the chat logs being recorded.

Alternatively, the prosecutor argued that section 632 did not apply to a felony involving violence against another person. (§ 633.5.) The prosecutor asserted that a lewd or lascivious act with a child who is under the age of 14 years (§ 288, subd. (a)) is considered to be a violent felony (§ 667.5, subd. (b)(6)), and therefore, the Yahoo! chat dialogues should not be suppressed pursuant to section 632.

In a separate alternative argument, the prosecutor reiterated that defendant did not have an objectively reasonable expectation of privacy when participating in the Yahoo! chat. The prosecutor argued that a message sent in a recorded format, i.e., writing, belies any claim of expected privacy.

Defendant argued that while it is possible to retain Yahoo! chat dialogues, a reasonable person would not anticipate someone actually saving a chat dialogue, and therefore, it was reasonable for defendant to expect that the chat dialogue would be kept private.

Additionally, defendant argued that the lewd and lascivious charge did not amount to a crime of violence because (1) the offense was charged as an attempt, rather than a completed act, and (2) an actual child was not involved in the case. Therefore, defendant argued that the violent felony exception to the section 632 exclusionary rule (§ 633.5) was not applicable.

The trial court began its analysis by finding that the motion to suppress was untimely. Therefore, the trial court addressed the motion as though it

were a pretrial motion to exclude evidence (motion in limine). When addressing the merits of the motion, the trial court first addressed the issue of whether defendant had an expectation of privacy when participating in the Yahoo! chat dialogues. The court found that a communication sent via the Internet was "completely dissimilar to a phone call." The court concluded that the private communication protected by section 632 was likely intended to be the type of communication that occurs over a telephone. The court noted that a telephone conversation ceases to exist when the conversation ends, unless the conversation is recorded; however, Internet communications, such as e-mails and instant messages, are sent via a recorded format, i.e., writing. The trial court concluded that "no person with knowledge or awareness of the technology as it pertains to [the] use of email and text messaging . . . could have any possible expectation of privacy . . . ."

Next, the trial court explained that a person chatting over the Internet with a stranger would have no means of verifying the true identity of the person with whom he is chatting, as amply demonstrated by the instant case, and therefore, "it would be illogical for anyone to assume that [an Internet chat dialogue] is a private communication that is entitled to . . . privacy in any capacity." The court found that it was "entirely unrealistic and irrational to believe" that a stranger on the Internet would hold a communication in confidence. Consequently, the trial court concluded that defendant did not have a reasonable expectation of privacy when participating in the Yahoo! chat dialogues.

Alternatively, the trial court concluded that if defendant *did* have an expectation of privacy, then attempted lewd or lascivious conduct with a child who is under the age of 14 years (§§ 664, 288, subd. (a)) qualified as a violent felony (§ 667.5, subd. (b)(6)), and therefore, the Yahoo! chat dialogues would fall within the violent felony exception (§ 633.5) to the exclusionary rule (§ 632).

In sum, the trial court ruled that the evidence of the Yahoo! chat dialogues would not be suppressed. During the prosecutor's direct examination of Coleen, large portions of the transcripts were read into the record; however, the physical transcripts of the Yahoo! chat dialogues were not admitted into evidence.

### B. *Analysis*

Defendant contends that the trial court erred by denying his request to suppress the evidence of the Yahoo! chat dialogues, pursuant to section 632. We disagree.

## 1. *Standard of Review*

We begin our analysis by determining the applicable standard of review. Defendant's opening brief and reply brief do not cite a standard of review; however, defendant treats the issue as a matter of law to be reviewed de novo. In the People's respondent's brief, they write, "A trial court's decision to admit evidence is reviewed for abuse of discretion and must not be disturbed on appeal unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10 [82 Cal.Rptr.2d 413, 971 P.2d 618].)"

Motions in limine are typically made to exclude evidence on the basis that the evidence is irrelevant or unduly prejudicial. (Evid. Code, § 352; see also *People v. Rowland* (1992) 4 Cal.4th 238, 255–269 [14 Cal.Rptr.2d 377, 841 P.2d 897]; see also *People v. Morris* (1991) 53 Cal.3d 152, 188–191 [279 Cal.Rptr. 720, 807 P.2d 949], disapproved on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1 [38 Cal.Rptr.2d 394, 889 P.2d 588].) We generally review rulings on such motions for an abuse of discretion. (*Rowland,* at p. 266.)

A trial court's ruling on a motion to suppress is subject to different standards of review than a trial court's ruling on a motion in limine. When a trial court rules on a motion to suppress evidence, the court " ' "(1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] . . . The [trial] court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review." [Citation.]' [Citations.]" (*People v. Carter* (2005) 36 Cal.4th 1114, 1140 [32 Cal.Rptr.3d 759, 117 P.3d 476].)

In the instant case, the trial court found that the motion to suppress was untimely and, therefore, stated that it would treat the motion as though it were a motion in limine to exclude evidence. However, the trial court did not exercise its discretion when ruling on the motion. Rather, the trial court followed the procedure for ruling on a motion to suppress. Specifically, the trial court applied section 632 to the facts of the case and concluded, as a matter of law, that defendant did not have a reasonable expectation of privacy when participating in the Yahoo! chats. Accordingly, application of the abuse

of discretion standard would lead to a fruitless analysis on our part, because the trial court did not exercise its discretion. In a prior case in which the defendant asserted that the trial court erred by not excluding, or suppressing, evidence pursuant to section 632, this court applied the standard of review associated with rulings on motions to suppress evidence. (*People v. Ratekin* (1989) 212 Cal.App.3d 1165, 1168–1169 [261 Cal.Rptr. 143] [Fourth Dist., Div. Two].) Consequently, we will again apply the standard of review associated with motions to suppress evidence.

### 2. *Merits*

For the most part, the parties agree on the facts of the case, and both parties have focused on section 632 as the applicable law. Accordingly, we direct our analysis towards the third step in the process—applying section 632 to the facts of the case.

■ Section 632, subdivision (a), provides that it is a crime to "intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrop[] upon or record[] the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Subdivision (d) of section 632 prohibits such recordings from being admitted in judicial proceedings. We will address each element of the subdivision in turn: (1) intent; (2) lack of consent; (3) confidential communication; (4) recording device; (5) recording.

First, there is no dispute that Coleen willfully retained the Yahoo! chat dialogues. Second, nothing in the record reflects that defendant consented to Coleen retaining a copy of the Yahoo! chat dialogues.

■ Third, this court previously concluded that "communication," for purposes of section 632, includes conduct, i.e., the definition is not limited to oral or written dialogues. (*People v. Gibbons* (1989) 215 Cal.App.3d 1204, 1209 [263 Cal.Rptr. 905] [Fourth Dist., Div. Two].; contra, *People v. Drennan* (2000) 84 Cal.App.4th 1349, 1356 [101 Cal.Rptr.2d 584] [conduct is not "communication" for purposes of § 632].) Accordingly, we conclude that the pictures of (1) defendant gripping his penis; and (2) a female orally copulating a male, qualify as "communication," within the meaning of section 632.

Next, we address whether the communication was confidential. "The term 'confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made . . . in any . . . circumstance in which the parties to the

communication may reasonably expect that the communication may be overheard or recorded." (§ 632, subd. (c).)

Defendant expressed a desire for the Yahoo! chat dialogue to be confined to himself and dark_dana_666. Specifically, defendant wrote that he was afraid of dark_dana_666's mother discovering their communications, and "[p]eople . . . call[ing him a] child abuser." Consequently, we conclude that the circumstances reasonably indicated that defendant desired the communication to be confidential.

Despite defendant's desire to keep the communication confidential, the circumstances of the communication were such that defendant could reasonably expect that the communication might be overheard or recorded. First, the Yahoo! privacy policy indicated that chat dialogues may be shared for the purpose of investigating or preventing illegal activities.[10] Second, Yahoo! warns users that chat dialogues can be "archive[d], print[ed], and save[d]." Third, defendant was communicating online with a person whom he did not know, via writing and photographs. Computers that are connected to the Internet are capable of instantaneously sending writings and photographs to thousands of people. Fourth, defendant expressed concern that dark_dana_666's mother would discover their communications, which reflects awareness that dark_dana_666's communications could be viewed or intercepted by her mother. In sum, it was not reasonable for defendant to expect the communications to be confidential because the circumstances reflect that the communications could have easily been shared or viewed by Yahoo!, dark_dana_666's mother, or any computer user with whom dark_dana_666 wanted to share the communication.

Next, we determine whether a recording device was used. This court has previously concluded that a video recorder "is a recording device for purposes of the privacy act." (*People v. Gibbons, supra*, 215 Cal.App.3d at p. 1208.) Accordingly, we will assume, based upon this prior decision, that Coleen's screenshots of her computer monitor, which reflected the Webcam images sent by defendant, fall within the ambit of a "recording device," because Coleen was effectively photographing defendant's photographs. In regard to the written words, we will assume for purposes of this opinion, without deciding, that Coleen's act of saving or printing the chat dialogues caused Coleen's computer or printer to be a "recording device." In turn, we assume, without deciding, that Coleen was "recording" when she used the "recording device(s)."

In conclusion, the trial court did not err by denying defendant's motion to suppress the evidence related to the Yahoo! chat dialogues because the

---

[10] See <http://info.yahoo.com/privacy/us/yahoo/details.html> (as of Apr. 2, 2010).

communications were not "confidential communications," and therefore, were not protected by section 632.

### 3. *Harmless Error*

To the extent that an error could be found in the trial court's denial of the motion to suppress, the court's error was harmless.

When determining whether a trial court's erroneous decision regarding a motion to suppress confidential communications (§ 632) was prejudicial to the defendant, we must decide if it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error. (*People v. Ratekin, supra,* 212 Cal.App.3d at pp. 1169–1170 [Fourth Dist., Div. Two].)

Coleen testified about her Internet communications with defendant. Coleen described the chat room that she used to communicate with defendant, and her instant message to Amanda about telephoning defendant. Accordingly, if Coleen had been questioned about her independent recollection of her communications with defendant, rather than directed to read the transcript of her communications with defendant, then evidence similar to the transcripts would likely have been presented to the jury, because Coleen demonstrated a clear recollection of the chat conversations.

Further, Amanda testified about her telephone conversation with defendant. Amanda's testimony was derived from her independent recollection and from notes she took following her telephone call with defendant. Amanda testified that defendant asked her if she was 12 years old, and Amanda confirmed that she was 12. Amanda testified that defendant asked her if she liked what she saw, and if she "would lick it." Accordingly, the trial testimony would have been sexually explicit even if the transcript of the chat conversations had been suppressed.

In sum, it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of the error because the jury would still have heard about defendant's sexually explicit communications with Coleen and Amanda.

### III. *VENUE**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

See footnote, *ante,* page 499.

## DISPOSITION

The judgment is affirmed.

Richli, Acting P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 21, 2010, S182558.