[Crim. No. 17551. Second Dist., Div. Four. Nov. 6, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY BRANDOW, Defendant and Appellant.

750

COUNSEL

Richard S. Buckley, Public Defender, Herbert M. Barish and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

JEFFERSON, J.—Jerry Brandow was charged by grand jury indictment with two counts of pandering, two counts of attempted pandering, and one count of conspiracy. On motion under Penal Code section 995 all charges were dismissed except one count of pandering and a second count of attempted pandering. The defendant's motion to suppress evidence of telephone conversations (Pen. Code, § 1538.5) and his subsequent motion to acquit (Pen. Code, § 1118.1) were denied and the jury returned a verdict of guilty as to the first count only. The defendant's subsequent motions for new trial and to set aside the indictment were denied; proceedings were suspended and the defendant was granted two years' probation conditioned upon the payment of a $300 fine and $75 penalty assessment. He appeals from the judgment (order granting probation).

Defendant Brandow contends that the recording of his telephone conversations without a warrant constituted illegal search and seizure and also violated his privilege against self-incrimination; that the prosecution's objection to the disclosure of the true name of the chief witness was improperly sustained; that defendant's motion to acquit was improperly denied; and that the grand jury indictment upon perjured testimony was invalid.

Michelle DuPree is the assumed name of a woman who formerly engaged in prostitution in the Hollywood and West Los Angeles areas. She was approached on or about March 1, 1968, by Officer Reeves of the Los Angeles Police Department, and she agreed voluntarily to cooperate with police in an attempt to suppress criminal pimping, pandering and prostitution. Officer

Reeves furnished Michelle with a tape recorder and she thereafter regularly recorded the conversations of various individuals who called on her private unlisted telephone line. She was visited almost daily by Officer Reeves who reviewed with her the contents of the tape recordings and the events since his last visit. She was requested by the police, who had no warrant, to record conversations with approximately 60 different people with whom she associated during this period and she obtained identifiable tapes of approximately 45 different persons, the defendant among them.

Among the places frequented by Michelle DuPree was the LaBrea Inn where, in early June 1968, about two months after she agreed to make taped records of her telephone conversations, she first met defendant Brandow. Michelle testified that defendant, who was then the piano player at the LaBrea Inn, came over to her during one of his breaks, told her that a couple of the "guys" at the club were good spenders and suggested that he introduce them to her. She disclosed the details of further meetings she had with the defendant at his invitation and she stated that the defendant, knowing she was then a prostitute, told her they could make a lot of money together. She gave defendant Brandow her telephone number at his request after he said that he would call her if he had any customers. Michelle was hospitalized for a couple of months from about June 18 until August 12 and as soon as she was discharged the defendant once again contacted her, suggesting that she should become his "old lady" and work for him and that he would send her business. Ultimately they agreed that she would pay him a certain amount of money for customers he sent and on several occasions she provided the services of another prostitute for customers sent over by defendant Brandow. Although Michelle dated the defendant for a while she broke off with him after about August 22 following a discussion with police and she rejected his proposal to become his "old lady" since she did not wish to establish that sort of relationship. She continued to have conversations with the defendant, however, and several she recorded.

The tape recording of the witness' October 16 conversation with defendant was played in court and was later played once more in court while the jurors were given copies of transcripts of the tape's contents which were verified as to accuracy by the witness. Matter which seemed to be unintelligible was deleted from the transcripts.

Michelle started collecting information for the police from the beginning of March through October 1968. She appeared before the grand jury in November 1968, and a number of persons, including defendant, were indicted as a result of the evidence she obtained. Their crimes ranged from vice to assault with a deadly weapon with intent to inflict great bodily harm. Since November 1968, Michelle had been kept under police protection and

continued to be protected in the interests of her own safety at the time of this trial since she had been attacked at least twice and her life was threatened on numerous occasions. She testified that Michelle DuPree was not her true name and the court, after hearing testimony outside the presence of the jury relative to threats to the witness' safety, sustained an objection to the question as to what her true name was.

The defendant Brandow contends that the recording of his telephone conversations without prior judicial approval constituted an illegal search and seizure and that the recording of such conversations without his consent violated his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel.

■ The tape-recorded conversations were properly admissible as evidence in corroboration of the testimony of Michelle DuPree. It is well established under California law that the monitoring of conversations with the consent of one of the conversants does not constitute an illegal search. (*People* v. *Canard* (1967) 257 Cal.App.2d 444, 464 [65 Cal.Rptr. 15].) Tape recordings of such conversations or transcripts thereof are properly admissible in corroboration of the testimony of one of the participants as to the substance and circumstances surrounding the conversations (*People* v. *Ragen* (1968) 262 Cal.App.2d 392 [68 Cal.Rptr. 700]), which accords with the legal principles established by the federal cases. (*People* v. *Chatfield* (1969) 272 Cal.App.2d 141 [77 Cal.Rptr. 118], and state and federal decisions therein cited.)

The federal cases relied upon by the defendant in support of his contentions relating to the tape recordings are clearly distinguishable. The case of *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507] is, as the trial court observed, inapplicable to the facts before the court, since that case involved a listening device installed without a warrant by federal investigators in the public telephone booth from which the suspect made illegal wagering calls. The Supreme Court has observed that the Fourth Amendment does not protect a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. (*Hoffa* v. *United States* (1966) 385 U.S. 293 [17 L.Ed.2d 374, 87 S.Ct. 408]; *Osborn* v. *United States* (1966) 385 U.S. 323 [17 L.Ed.2d 394, 87 S.Ct. 429]; *Lopez* v. *United States* (1963) 373 U.S. 427 [10 L.Ed.2d 462, 83 S.Ct. 1381].)

■ Defendant further contends that admission of the tape recordings infringed his privilege against self-incrimination and his right to counsel. There was no right to counsel or to constitutional admonitions where the defendant's recorded conversations were of voluntary statements made be-

fore he was placed in custody and before suspicion had directly singled him out and focused upon him while the defendant had total freedom of action and response. (*People* v. *Ragen* (1968) 262 Cal.App.2d 392, 396-399 [68 Cal.Rptr. 700].) The statements were not made under testimonial compulsion, hence the defendant cannot claim violation of his right against self-incrimination. (*Hoffa* v. *United States, supra.*)

■ Defendant Brandow further contends that the court erred in sustaining the prosecution's objection to the question as to what was Michelle DuPree's true name and that he was thus deprived of his right to confrontation and cross-examination. The court on *voir dire* heard and considered extensive evidence that the witness' life was in danger and that revealing her true identity or information from which it might be learned would unduly enhance the danger. Officer Reeves disclosed threats which had been made to the life of the witness and physical harm and abuse which had already been inflicted upon her. The witness corroborated these facts and testified to her fear that she might be traced through her family. The court, balancing the defendant's constitutional interests against the protection of the witness' physical safety, sustained the objections to questions as to the true identity of the witness, the name of her home town and that of the doctor who performed her recent surgery and the address of her grandmother.

In *Smith* v. *Illinois* (1968) 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748], the petitioner's conviction of illegal sale of narcotics was reversed on the ground that his constitutional right to a fair trial was prejudicially violated by the trial court's ruling that the correct name and address of the informer witness need not be disclosed. There was no suggestion of danger to the physical safety of the witness and the concurring opinion of Justice White, joined in by Justice Marshall, suggested that, under proper circumstances including a showing that the information would tend to endanger the personal safety of the witness, he might be excused from answering. (*Smith* v. *Illinois, supra,* pp. 133-134 [19 L.Ed.2d pp. 959-960].) This rationale was followed by the 7th Circuit (*United States* v. *Palermo* (7th Cir. 1969) 410 F.2d 468, 472), in which the court observed that the decision to disclose a witness' address or place of employment cannot be made in a vacuum and where a showing is made of actual rather than conjectural threat to the witness' safety the trial court may, in its sound discretion, foreclose the inquiry. (See also *United States* v. *Varelli,* 407 F.2d 735; *Kirschbaum* v. *United States,* 407 F.2d 562, 565.)

There were only two principal witnesses to the events upon which the charges against the defendant in this case rested: Michelle DuPree and the defendant, himself. The defendant testified, in refutation of the statements made by the prosecuting witness, that he became acquainted with her in

June 1968, and that it was his intention to marry her. He explains in this manner the substance of the tape-recorded conversations in which the voices of the two parties were identifiable. Impeachment might be of limited value with respect to these conversations were the statements made by the defendant thereon clearly and independently incriminating. To the contrary, the contents of the tape-recorded conversations are vague and subject to various interpretations. Under the circumstances, the credibility of the two opposing witnesses constitutes the fulcrum upon which the determination of the defendant's guilt or innocence must be balanced. We conclude that the identity of the witness was an essential element in the protection of the defendant's right to a fair trial.

In view of our conclusion, it is unnecessary to consider additional contentions of error asserted by defendant Brandow.

The judgment of conviction is reversed.

Files, P. J., and Kingsley, J., concurred.