Filed 1/26/15  P. v. Weger CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>PHIL ROGER WEGER,<br><br>        Defendant and Appellant. | F066211<br><br>(Super. Ct. No. CRM019250)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Donald J. Proietti and Ronald W. Hansen, Judges.†

Thea Greenhalgh, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

---

†        Judge Proietti presided over appellant's motion to suppress hearing; Judge Hansen presided over appellant's trial.

## *INTRODUCTION*

Appellant Phil Roger Weger challenges his convictions for first degree burglary and grand theft. He contends the trial court erroneously denied his motion to suppress two surreptitiously recorded conversations between himself and the victim, Cynthia DeBernardi, in which he made admissions regarding the burglary and thefts. He asserts the admission of the recordings violated the California Invasion of Privacy Act (Pen. Code, § 630 et seq.) and the Fourth Amendment of the United States Constitution.

We find appellant's arguments unpersuasive and affirm.

## *PROCEDURAL BACKGROUND*

On January 30, 2012, the Merced County District Attorney's Office filed an information charging appellant with first degree burglary (count 1; Pen. Code, § 459 ),[1] and grand theft (count 2; § 487, subd. (a)). The following enhancements were further alleged in both counts: (1) appellant had sustained two prior convictions (§§ 1170.12 & 1192.7, subd. (c)); (2) the prior felony convictions were "serious felonies" (§§ 1170.12 & 667, subd. (a)(1)); and (3) he had sustained three prior felony convictions for which he served separate prison terms and failed to remain free of prison custody for a period of five years (§ 667.5, subd. (b)).[2] Appellant pled not guilty.

Before trial, appellant moved to suppress two recorded conversations that occurred on or about August 2 and August 6, 2011, between himself and his ex-girlfriend, DeBernardi, who was the victim of the charged crimes. Appellant sought exclusion under sections 632 and 1538.5. On June 28, 2012, the trial court conducted a hearing on

---

[1]  All further statutory references are to the Penal Code unless otherwise noted.

[2]  Prior to trial, the prosecutor dismissed two of the enhancements in count 2 alleging that appellant had previously been convicted of a "serious felony" under sections 1170.12 and 667, subdivision (a)(1).

appellant's motion to suppress, which was denied. A detailed account of the hearing is set forth in section I of the Discussion, *post.*

On September 4, 2012, jury trial commenced, and on September 7, 2012, the jury found appellant guilty on both counts. Appellant waived his right to a jury trial on the alleged prison priors and prior strike convictions, which the trial court found true. On November 20, 2012, appellant was denied probation and sentenced to 12 years on count 1 with the imposition of two prior strike allegations[3] attached to that count along with one prior prison term enhancement for an aggregate sentence of 23 years. Appellant was sentenced to six years on count 2 with three additional years from three prior prison term enhancements for a total of nine years, which the trial court stayed pursuant to section 654.

### FACTUAL BACKGROUND

Appellant does not challenge the sufficiency of the evidence supporting his convictions. Set forth below is a summary of the trial facts taken in the light most favorable to the judgment.

DeBernardi lived in a double-wide mobile home on American Avenue in Hilmar (Merced County). She was romantically involved with appellant off and on for about two or three years. Appellant would occasionally stay with her in Hilmar.

On July 19, 2011, DeBernardi decided to end the relationship and she told appellant to pack up his belongings. As he was packing, appellant said she would "be sorry" and she would not know what he meant until "it [was] done." She drove appellant to the Bay Area to a residence where he lived with his daughter. During the drive, appellant seemed very upset and continued to threaten that she would "be sorry." DeBernardi dropped appellant off at the Bay Area residence at approximately 11:30 p.m.

---

**3**   The trial court struck one of the charged prior strike convictions.

on July 19, 2011. It took approximately an hour and a half to make the commute. Appellant asked DeBernardi to contact his ex-wife so he could get his truck back from her.

DeBernardi spent the night of July 19, 2011, with her mother in the Bay Area, and she drove home the following evening, arriving home after dark. Upon arriving home, she noticed things had been moved in her house and $500 was missing, which was inside a little box in her nightstand drawer. She contacted law enforcement that night.

The following day, DeBernardi realized 15 to 20 pieces of jewelry were missing, consisting of costume jewelry, a "little gold pacifier" her husband gave her when her first baby was born, and various bracelets, rings and earrings. She also discovered the doorknob and lock on the back door was completely knocked out, something she did not notice on the first night when she initially reported the theft. She discovered a shed near her trailer had been broken into as well. She prepared a property list, which she gave to law enforcement.

At some point after realizing her jewelry was missing, DeBernardi contacted appellant on the telephone and asked him why he did it and when she could get her jewelry back. Appellant admitted he took her jewelry and said he would bring some of it back. Appellant also told her he gained entrance to her residence using a butter knife and then in a later conversation he said he used a "jiggler" that he made.

On July 25, 2011, appellant returned some of the cheaper "costume jewelry" back to DeBernardi. He told her the more expensive items were gone and he brought her "the junk."

On July 26, 2011, DeBernardi realized her father's antique silver dollar collection was also missing, which included paper money in an unknown amount. There were approximately one hundred coins, some of which she estimated were worth thousands of dollars. After noticing the coins were missing, DeBernardi met with Deputy Sheriff

4.

Vince Gallagher, who advised her to purchase a recorder and attempt to get appellant to explain what happened.

On August 2, 2011, DeBernardi recorded appellant on the telephone. The recording was played for the jury. In the first recording, appellant denied stealing from her but also said he was "working" on getting back the rest of her jewelry.

The following evening, DeBernardi recorded appellant again as they sat together in her car. The second recording was played for the jury. During the second recording, appellant stated he took "it all" in one shot and "sold some of it." Appellant stated he sold "[a] couple hundred bucks worth of shit. $250 or something." When asked why he took the stuff rather then ask her for it, appellant stated, "I needed it." Appellant described how he gained access to DeBernardi's home with "a shaker" and a friend helped him but only appellant stole the items. Appellant admitted he sold the coins at a coin shop and received about $2,000 for them. When asked about the jewelry, appellant said he got about $200 or $250 for them.

## *DISCUSSION*

Appellant contends the trial court erred in not suppressing the two recorded conversations he had with DeBernardi. He argues their admission violated section 632, subdivision (d), and his reasonable expectation of privacy under the Fourth Amendment.

## I. *Hearing on Appellant's Suppression Motion.*

DeBernardi testified at the hearing for appellant's suppression motion. Before she took the witness stand, the prosecutor argued the recordings were admissible under section 633 of the California Invasion of Privacy Act and cited *People v. Towery* (1985) 174 Cal.App.3d 1114 (*Towery*) as support. The prosecutor contended DeBernardi recorded appellant at the direction of law enforcement. Regarding the Fourth Amendment claim, the prosecutor cited *People v. Brandow* (1970) 12 Cal.App.3d 749 (*Brandow*) and *Hoffa v. United States* (1966) 385 U.S. 293 (*Hoffa*) as support that suppression was not required.

Defense counsel argued DeBernardi did not record appellant "at the behest of law enforcement," but did so on her own and brought the evidence to law enforcement after the fact. Defense counsel also referenced *Towery* as support that the recordings were inadmissible.

### A.     *DeBernardi's testimony at the suppression hearing.*

DeBernardi testified she suspected appellant was responsible for the burglary that took place at her house in July of 2011. She spoke with appellant after the burglary, which she did not record. At some point, she spoke with Deputy Sheriff Gallagher, who told her she could record appellant's conversation. DeBernardi recorded two conversations with appellant, which occurred "back-to-back within 24 hours of each other."

She was in contact with Gallagher "throughout the whole process." Gallagher told her what type of recorder to purchase and "what to do." She purchased her own digital recorder.

On cross-examination, she testified she did not meet with Gallagher after the first recording because the two recorded conversations were within 24 hours of each other. She confirmed she recorded appellant under Gallagher's instruction but Gallagher was not with her when the recordings occurred. She questioned Gallagher if it was legal to record appellant and he informed her it was not illegal because it was under the investigation of a crime.

### B.     *Additional evidence at the suppression hearing.*

The prosecution asked the court to refer to the transcript of the preliminary hearing at page 14, lines 22 through 24, for Gallagher's testimony. The court did so and read that section into the record as follows: "Q[uestion:] And the recording was done at your direction; right? [¶] A[nswer:] Yes." The prosecutor also directed the court to review Gallagher's police report on this matter for clarification of dates and the timing of when the recordings were given to law enforcement. The parties submitted the matter.

6.

### C. The trial court denies the suppression motion.

The court read *Towery* and stated it found "many similarities" between the situation in *Towery* and appellant's circumstances. The court noted law enforcement did not provide the recording equipment in both *Towery* and appellant's situation. The court commented that the person who recorded the conversation in *Towery* was directed and supervised "very loosely" by law enforcement. The court also stated *Brandow* was cited in *Towery* for the proposition the Fourth Amendment "does not protect a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it."

The court ruled: "Based upon the testimony and evidence presented, what the Court has considered, I find that there is sufficient evidence to support that the tape recordings as described were directed, although loosely, but in compliance with the *Towery* decision and by Penal Code Section 633. The Court finds that the tape recordings are not illegal evidence that was recorded, and, therefore, the motion to suppress is denied."

## II. Appellant's Fourth Amendment Rights Were Not Violated.

Appellant argues he had a reasonable expectation of privacy in his communications with DeBernardi. He contends the Fourth Amendment was violated when his conversations were recorded without a warrant.

### A. Standard of review.

"The Fourth Amendment protects '[the] right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" (*California v. Ciraolo* (1986) 476 U.S. 207, 217.) "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" (*Id.* at p. 211, quoting *Katz v. United States* (1967) 389 U.S. 347, 360 (*Katz*).) The Fourth Amendment prohibits unreasonable searches and seizures, and it is per se unreasonable to conduct a search without prior judicial approval absent a

few specific exceptions. (*Mincey v. Arizona* (1978) 437 U.S. 385, 390; accord *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1224.) The Fourth Amendment requires state and federal courts to exclude evidence obtained from unreasonable government searches and seizures. (*People v. Williams* (1999) 20 Cal.4th 119, 125.) Section 1538.5 allows a defendant to move to suppress evidence obtained in an improper seizure.

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

### B.    Analysis.

Three cases, *Hoffa, supra,* 385 U.S. 293, *Brandow, supra,* 12 Cal.App.3d 749 and *People v. Phillips* (1985) 41 Cal.3d 29 (*Phillips*), are instructive regarding the scope of Fourth Amendment protection for a defendant's private conversations involving criminal activity.

In *Hoffa*, the United States Supreme Court examined whether the Constitution required suppression of evidence which the government obtained "'by means of deceptively placing a secret informer in the quarters and councils of a defendant'" which was then used in a subsequent trial against the defendant. (*Hoffa, supra,* 385 U.S. at p. 295.) The evidence in *Hoffa* came from a government informant who had close connections to the defendant James Hoffa. The informant testified at trial he was present when Hoffa and others discussed making bribes to a previous federal jury. (*Id.* at p. 296.) Hoffa argued, inter alia, his Fourth Amendment rights were violated because the informer failed to disclose his connection to the government, thereby vitiating any consent Hoffa gave for his presence at the locations where the conversations took place. (*Id.* at p. 300.) Hoffa contended the informer conducted an illegal Fourth Amendment "'search'" for verbal evidence. (*Ibid.*)

The *Hoffa* court held the defendant had "no interest legitimately protected by the Fourth Amendment" because the informer was invited to the conversations. (*Hoffa, supra,* 385 U.S. at p. 302.) The informer "was not a surreptitious eavesdropper." (*Ibid.*) The *Hoffa* court made it clear that no Fourth Amendment violation occurred because the defendant "was relying upon his misplaced confidence that [the informer] would not reveal his wrongdoing." (*Ibid.*) The court further noted it had never "expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." (*Ibid.*)

Similarly, in *Phillips, supra,* 41 Cal.3d 29, our Supreme Court found no Fourth Amendment expectation of privacy when a suspect voluntarily disclosed information to a confidant. (*Id.* at p. 52.) In *Phillips*, the defendant was a fugitive when he spoke with an acquaintance on the telephone. The acquaintance alerted law enforcement, who asked him to record a telephone conversation with the defendant on a tape recorder. (*Id.* at p. 51.) The acquaintance recorded a telephone conversation with the defendant on his tape recorder, which was subsequently admitted against the defendant at trial. (*Id.* at pp. 51-52.) On appeal, the *Phillips* court rejected a claim the recording constituted an unreasonable search. The court stated "a defendant has no constitutionally protected expectation that his confidant will not reveal a conversation to the police, and the recording merely corroborates and assures the accuracy of the confidant's later testimony." (*Id.* at p. 52.) Moreover, the *Phillips* court noted a defendant extends his "zone of privacy" when he takes a companion into his confidence and there is "no constitutional principle that prohibits the recipient of a confidence from breaching the trust reposed in him not to disclose it to others, including the police." (*Id.* at p. 53.)

Finally, in *Brandow, supra,* 12 Cal.App.3d 749, a police officer furnished a prostitute with a tape recorder after she agreed to help police in a crackdown on criminal pandering, pimping and prostitution. The prostitute recorded conversations of various individuals who called her using her private unlisted telephone line. The police officer

visited the prostitute almost daily, and reviewed with her the contents of the tape recordings and the activities since the last visit. (*Brandow, supra,* 12 Cal.App.3d at p. 752.) The prostitute recorded conversations with approximately 60 different people and obtained identifiable tapes of approximately 45 different persons, including the defendant. The prostitute testified at trial, and the tape recordings were played to the jury. On appeal, the *Brandow* court rejected the defendant's claim the surreptitious tape recordings constituted an illegal search, citing *Hoffa, supra*, 385 U.S. 293, and other Supreme Court decisions. (*Brandow, supra,* at p. 753.) The *Brandow* court also noted the recordings were properly admissible as corroborating the prostitute's testimony under the "well established" rule that a conversation may be monitored when one person to the conversation consents. (*Ibid.*)

Here, like in *Hoffa*, *Phillips*, and *Brandow*, appellant cannot establish a Fourth Amendment violation because he voluntarily disclosed his criminal activity to DeBernardi. As the *Hoffa* court stated, no Fourth Amendment violation occurred because appellant had "misplaced confidence" his ex-girlfriend and the victim of his criminal activity would not reveal his wrongdoing. (*Hoffa, supra,* 385 U.S. at p. 302.) The Supreme Court has not extended Fourth Amendment protection to "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." (*Ibid.*; see *Phillips, supra*, 41 Cal.3d at p. 52.)

Appellant, however, attempts to distinguish *Hoffa, Phillips* and *Brandow* by repeatedly arguing DeBernardi was neither an accomplice, co-conspirator, nor an informer, and he did not discuss ongoing or contemplated criminal activity with her. As a result, appellant asserts he could not have assumed a "risk" existed when he spoke with DeBernardi, his former girlfriend, that she would divulge their private conversations.

Appellant's arguments have no weight because the holdings in *Hoffa, Phillips* and *Brandow* are not contingent on whether or not it was an informer or co-conspirator who participated in the private conversations with the respective defendants. Further, it is

10.

immaterial whether or not on-going criminal activity was discussed. Indeed, in *Phillips*, the defendant was recorded by an acquaintance who was not criminally involved with the defendant and the defendant was wanted for past criminal activity. (*Phillips, supra,* 41 Cal.3d at pp. 42, 51.) Instead, these cases make it clear no Fourth Amendment expectation of privacy exists for voluntary disclosure of information to a confidant. (*Hoffa, supra,* 385 U.S. at p. 303; *Phillips, supra,* 41 Cal.3d at p. 53; *Brandow, supra,* 12 Cal.App.3d at p. 753.)

Appellant, however, further asserts he had a reasonable expectation his communications with DeBernardi were private, confidential and would not be recorded. He relies generally on *Katz, supra,* 389 U.S. 347 and *Flanagan v. Flanagan* (2002) 27 Cal.4th 766 (*Flanagan*) to support his contention the warrantless recordings were unreasonable. Appellant's reliance is misplaced as those cases are readily distinguishable.

In *Katz, supra,* 389 U.S. 347, the United States Supreme Court held a Fourth Amendment violation occurred when federal agents planted an electronic listening and recording device outside a public telephone booth and overheard the defendant transmitting wagering information. (*Id.* at pp. 348, 359.) Based on the facts, *Katz* is of no consequence to the present analysis. It is undisputed DeBernardi was neither a government agent nor someone who intruded upon appellant's seclusion and planted a recording device. (See *Hoffa, supra,* 383 U.S. at p. 301 [Fourth Amendment protects against intrusion into a protected area such as a person, home, office, hotel room or an automobile].)

We are also unpersuaded by *Flanagan, supra,* 27 Cal.4th 766, in which an estranged wife began taping all of her husband's conversations with their grandson, who sued on the grounds that the wife recorded confidential communications without his consent in violation of the California Invasion of Privacy Act (§ 630 et seq.). The jury found that 24 calls were confidential and awarded damages. The Court of Appeal reversed and limited the damage award. On review, our Supreme Court examined the

11.

definition of "confidential communication" as stated in section 632. (*Flanagan, supra,* 27 Cal.4th at p. 772.) The *Flanagan* court examined the prior decisions construing section 632, and it determined that the decisions of *Frio v. Superior Court* (1988) 203 Cal.App.3d 1480 and *Coulter v. Bank of America* (1994) 28 Cal.App.4th 923 were correct; that is, "a conversation is confidential if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded. [Citations.]" (*Flanagan, supra,* 27 Cal.4th at p. 768.)

Using the definition of "confidential communication" endorsed by *Flanagan*, appellant attempts to argue DeBernardi's "warrantless recording was unreasonable" and infringed on an interest "that the Fourth Amendment was designed to protect." This argument is without merit because *Flanagan* did not use this definition as a basis to extend Fourth Amendment protection. *Flanagan* was a civil action that did not involve criminal charges or constitutional analysis. *Flanagan* is distinguishable and has no bearing on whether defendant had a reasonable expectation of privacy under the Fourth Amendment.

As discussed under *Hoffa*, *Phillips*, and *Brandow*, appellant had no reasonable expectation of Fourth Amendment privacy when he voluntarily disclosed his criminal activity to his former girlfriend, who was the victim of the very crimes he discussed with her. As such, appellant cannot establish his Fourth Amendment rights were violated or that he was "unlawfully seized" as he contends. Thus, the trial court properly denied his motion to suppress under constitutional grounds.

## III. *California's Wiretapping Statute Did Not Require Suppression Of The Recordings.*

Appellant next contends the trial court violated the California Invasion of Privacy Act (§ 630 et seq.), by admitting DeBernardi's recordings. He maintains the trial court misapplied section 632, subdivision (d), when finding the recordings were admissible.

12.

## A.      Standard of review.

The California Invasion of Privacy Act regulates wiretapping and electronic eavesdropping, and prohibits the electronic eavesdropping or recording of any "confidential communication" absent consent of all parties to the communication.[4] (*Flanagan, supra,* 27 Cal.4th at pp. 768-769; *Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1388.)  With specified exceptions, the statute bars admission of any recorded confidential communication in a judicial proceeding.  (§ 632, subd. (d)[5]; *People v. Nazary* (2010) 191 Cal.App.4th 727, 746; *People v. Nakai* (2010) 183 Cal.App.4th 499, 517.)  One exception is for law enforcement activity (§ 633).[6]

Typically an appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard.  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)  However, when a trial court, like here, determined section 632 was not violated as a matter of law, the standard of appellate review is de novo applying section 632 to the facts of the case.  (*People v. Nazary, supra,* 191 Cal.App.4th at pp. 746-747; *People v. Nakai, supra*, 183 Cal.App.4th at p. 517; *People v. Ratekin* (1989) 212 Cal.App.3d 1165, 1168-1169.)

---

[4]      A "confidential communication" is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto . . . ."  (§ 632, subd. (c).)

[5]      "Except as proof in an action or prosecution for violation of this section, no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section shall be admissible in any judicial, administrative, legislative, or other proceeding."  (§ 632, subd. (d).)

[6]      Section 633 provides, in relevant part, that nothing in section 632 prohibits "any sheriff, undersheriff, or deputy sheriff regularly employed and paid in that capacity by a county, . . . or any person acting pursuant to the direction of one of these law enforcement officers acting within the scope of his or her authority, from . . . recording any communication that they could lawfully . . . record . . . ," and nothing in section 632 "renders inadmissible any evidence obtained by the above-named persons by means of ... recording any communication that they could lawfully . . . record . . . ."  (§ 633.)

***B.***     ***Analysis.***

As an initial matter, respondent asserts that the Proposition 8 "Truth-in-Evidence" provision of the California Constitution[7] abrogated the exclusionary rule set forth in section 632, subdivision (d), citing *People v. Algire* (2013) 222 Cal.App.4th 219 (*Algire*). As such, respondent argues appellant has no grounds for relief under section 632, subdivision (d), in light of *Algire*.

In his reply brief, appellant argues the prosecution failed to preserve this issue for appeal by not raising this assertion in the lower court. In the alternative, appellant contends *Algire* was wrongly decided and asks us to disregard *Algire* and reach the merits.

We need not determine whether *Algire* requires us to disregard section 632, subdivision (d), because on March 19, 2014, the Supreme Court ordered *Algire* to be depublished.[8] (*People v. Algire* (Dec. 17, 2013, B244557) review den. and opn. ordered nonpub. Mar. 19, 2014, S216109.) A depublished case may neither be cited nor relied upon by a court or a party. (Cal. Rules of Court, rules 8.1115(a) & 8.1105(e).) As such, we also need not address whether this issue was preserved for appeal. In any event, appellant's argument is unpersuasive when the merits are considered.

---

**7**     Article I, section 28, subdivision (f)(2), of the California Constitution, part of Proposition 8, states in relevant part: "Right to Truth-In-Evidence. Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings[] . . . ."

**8**     We note that, aside from *Algire, supra,* 222 Cal.App.4th 219, Courts of Appeal continue to recognize section 632, subdivision (d), as a means to prohibit admission of recordings that violate the California Invasion of Privacy Act. (See *People v. Nazary*, *supra,* 191 Cal.App.4th at p. 746; *People v. Nakai, supra*, 183 Cal.App.4th at p. 517; *People v. Crow* (1994) 28 Cal.App.4th 440, 452; *Frio v. Superior Court, supra,* 203 Cal.App.3d at p. 1490.)

In denying appellant's suppression motion, the trial court relied, inter alia, on this court's holding in *Towery, supra,* 174 Cal.App.3d 1114. In *Towery*, the defendant was one of six codefendants charged with conspiracy to commit thefts of fuel oil. The defendant was convicted of two counts of grand theft but found not guilty for conspiracy. On appeal, the defendant argued the trial court erred in ruling admissible recorded telephone conversations with a codefendant, Conroy, who recorded conversations with defendant without defendant's knowledge. (*Towery, supra,* 174 Cal.App.3d at pp. 1123-1124.) The *Towery* court held the recorded conversations were properly admitted.

The court noted none of the defendants disputed "the well-established rule that a tape recording of a conversation between a criminal defendant and a third party *made with the voluntary consent of the third party* is admissible in a criminal proceeding." (*Towery, supra,* 174 Cal.App.3d at p. 1124, italics in original, citing, generally, *People v. Murphy* (1972) 8 Cal.3d 349, 359-361; *People v. Fulton* (1984) 155 Cal.App.3d 91, 100, fn. 6; *People v. Blend* (1981) 121 Cal.App.3d 215, 229.) The *Towery* court rejected the defendant's first argument that Conroy's consent was "coerced" because he cooperated with police to avoid criminal liability. Instead, the appellate court found that Conroy "freely consented to the recording of telephone conversations" and was not coerced because he voluntarily contacted the police and offered to cooperate with them in the investigation of the thefts. (*Towery, supra,* at p. 1125.)

The *Towery* court next rejected the contention the recorded conversations should have been excluded pursuant to section 632, subdivision (d). The court determined the law enforcement exception under section 633 applied even though Conroy used his home telephone and personal tape recorder to record the conversations, which occurred without a police officer present when a recording was made. (*Towery, supra,* 174 Cal.App.3d at pp. 1126-1127.) The court noted it was reasonable to permit Conroy to make the recordings at home versus the police station because a sudden change in the telephone number might create suspicion. (*Id.* at p. 1129.)

15.

The *Towery* court observed a law enforcement officer provided Conroy with the tapes to use, which Conroy turned in to law enforcement on a regular basis, "usually within a day of recording and never more than three days from the time the tape was completed." (*Towery, supra,* 174 Cal.App.3d at p. 1127.) Law enforcement directed Conroy "to record all telephone calls dealing with the subject matter of stolen oil, and Conroy testified that he recorded most of the telephone conversations he received pertinent to the ongoing investigation." (*Ibid.*) The *Towery* court held the "looseness of law enforcement direction" was an issue of weight and not initial admissibility of the tapes. (*Id.* at p. 1129.) The court finished its analysis noting "[n]o counsel was precluded at trial from questioning Conroy or [the law enforcement officer] about the manner in which the tapes were made, nor were they precluded from arguing to the jury that Conroy, with his significant motivation in cooperating with the police, might have altered the tapes to further his own interest." (*Id.* at p. 1129.)

Here, like in *Towery*, DeBernardi recorded appellant's conversations based on directions from a law enforcement officer to do so. Like in *Towery*, DeBernardi used her own recording equipment and telephone to record appellant. Unlike in *Towery*, Gallagher did not provide DeBernardi with tapes given the advancement in recording technology. However, like in *Towery*, DeBernardi turned over the recordings shortly after obtaining them and she was in contact with Gallagher "throughout the whole process." As such, contrary to appellant's assertion, *Towery* is not distinguishable and it controls. DeBernardi acted "pursuant to the direction" of Gallagher, a deputy sheriff, so that section 633 was satisfied. (§ 633.)

As the *Towery* court noted, any "looseness" regarding Gallagher's direction of DeBernardi goes to the recordings' weight and not their admissibility. Defense counsel was not precluded at trial from questioning both Gallagher and DeBernardi about how the recordings were made, nor was defense counsel precluded from arguing to the jury DeBernardi may have had motivation in implicating appellant or altering the recordings.

16.

As such, like in *Towery*, the trial court properly denied appellant's motion to suppress as the recordings did not violate section 632.

Because the court properly denied appellant's motion to suppress, appellant cannot establish any error requiring reversal of his convictions under *People v. Watson* (1956) 46 Cal.2d 818, 836.

### **DISPOSITION**

The judgment is affirmed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
KANE, J.


_____
POOCHIGIAN, J.