Filed 2/18/15  P. v. Malcolm CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F063174 |
| Plaintiff and Respondent, | (Super. Ct. No. F09901869) |
| v. | |
| JONATHAN McCOY MALCOLM, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  James M. Petrucelli, Judge.

Nuttall & Coleman, Roger T. Nuttall and Glenn M. Kottcamp for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe for Plaintiff and Respondent.

-ooOoo-

Jonathan Malcolm engaged in a pattern of inappropriate behavior with underage girls who were students at a high school where he was employed as a music teacher.  A Fresno County jury found him guilty of one count of sexually penetrating a minor (Pen.

Code,[1] § 289, subd. (h)), six counts of oral copulation with a minor (§ 288a, subdivision (b)(1)), and six counts of sending harmful matter to a minor with the intent to seduce (former § 288.2, subd. (a)). He was sentenced to an aggregate term of seven years and four months in prison.

Malcolm appeals his convictions under a former version of section 288.2, which has since been repealed and reenacted in substantially the same form (see discussion, *infra*). He maintains there was insufficient evidence to establish his intent to seduce certain students to whom he had sent sexually explicit text messages and photographs, and he further argues that the statute was worded in an unconstitutionally vague manner at the time of his prosecution. Additional claims are presented concerning the trial court's rejection of a special jury instruction proposed by the defense, the court's denial of probation at the time of sentencing, and the length of the imposed prison term. Finding no cause for reversal, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Malcolm was charged by amended information with 13 felony counts relating to three victims who were under the age of 18 at the time of the offenses. The charging document alleged acts of oral copulation (Counts 1-6) and sexual penetration (Count 7) with Jane Doe I between May 1, 2007 and August 31, 2007. Malcolm's second victim is, rather perplexingly, identified throughout the record as Jane Doe III. It was alleged that Malcolm provided harmful matter to Jane Doe III for sexual purposes within the meaning of former section 288.2, subdivision (a) on multiple occasions between December 1, 2007 and May 31, 2008 (Counts 10-13). Additional violations of former section 288.2, subdivision (a) were alleged to have occurred between September 1, 2008 and January 28, 2009 with the third victim, Jane Doe II (Counts 8-9). To avoid confusion, we refer to Jane Doe I as "Victim One," to Jane Doe III as "Victim Two," and to Jane Doe II as

[1] All statutory references are to the Penal Code.

2.

"Victim Three."  All charges were tried before a jury in December 2010 and January 2011.

Prosecution Case

Victim One attended a charter high school for musically inclined students from 2003 to 2007.  She took several classes taught by Malcolm during the last few semesters of her enrollment and served as his teacher's assistant (TA) throughout her senior year.  Malcolm was 29 years old when she became his TA, and had turned 30 by the time she graduated in Spring 2007.  Victim One was 17 years old during the time period relevant to Counts 1 through 7.

Victim One developed what she considered to be a close friendship with Malcolm while working as his TA.  They eventually began to interact outside of normal school hours, conversing in person, over the telephone, by e-mail, and via text messaging.  The topics of discussion included sex, which came up more frequently as she approached graduation.  Malcolm shared the details of his experiences with various women whom he had been with prior to getting married and asked probing questions of Victim One concerning the level of physical intimacy she had reached with her boyfriend.  Their familiarity with one another progressed to the point where Malcolm would sometimes claim to be masturbating during their telephone conversations and encouraged Victim One to engage in the same activity as they talked.

Malcolm and Victim One kissed a few days after she completed the 12th grade.  This marked the initial stage of a consensual sexual affair that began around June 2007 and lasted for approximately six weeks.  They never had intercourse (due to an unwillingness on her part), but Malcolm digitally penetrated Victim One and received oral sex from her on multiple occasions.  Victim One also allowed Malcolm to orally copulate her during one of their trysts.  She ultimately terminated the relationship before moving away to attend college.

3.

On Victim One's referral and recommendation, Victim Two became Malcolm's new TA for the 2007/2008 school year. Victim Two, who had just turned 16, was a sophomore during the time period relevant to Counts 10 through 13. The TA position required her to spend several hours alone with Malcolm in his classroom every week, which led to the formation of a close interpersonal relationship. They soon began communicating outside of school and sending text messages to each other on their mobile phones.

Victim Two estimated that she and Malcolm exchanged tens of thousands of text messages between approximately November 2007 and May 2008. It was not uncommon for their texting "conversations" to stretch on for hours at a time and late into the night. Many of the conversations were of a sexually explicit nature.

Malcolm first broached the topic of sex with Victim Two by making risqué jokes and asking questions about her personal sexual history. She informed him that she had never been kissed and planned to remain a virgin until marriage. Malcolm shared with her his opinion that a person could have oral sex without losing their virginity. He also encouraged her to try masturbation, which she had never done before, and instructed her on to how to stimulate herself with her fingers.

Malcolm shared a number of stories with Victim Two about his past lovers. His text messages contained graphic details of the positions and techniques he and his partners had used during various sexual encounters, including the loss of his virginity to an ex-girlfriend, his first "oral experience," and his extramarital affair with Victim One. There were additional tales of a one-night stand in a motel room, mutual masturbation with a female friend on a trampoline, and an alleged "threesome" between himself and two other women. Some of the stories provided context for more subtle overtures. Malcolm once expressed regret over not receiving oral sex from a partner whom he remembered as having particularly nice lips, and later told Victim Two that she also had nice lips. He relayed another story that involved him ejaculating on a woman's stomach,

4.

and requested that Victim Two provide him with a picture of her own torso.  She complied by sending him a self-shot photograph of the area between her waist and neck, clad in only a brassiere.  Malcolm sent a response complimenting her on her flat stomach and saying something to the effect of, "that [stomach] would be nice to come on."

By Spring 2008, it had essentially become routine for Malcolm to tell Victim Two that he was masturbating during their text message exchanges.  He sometimes asked her to participate in the same activity and to describe for him how she was touching herself.  Malcolm offered on one occasion to send her "a picture of his come," but she declined.

Victim Two never had physical sexual contact with Malcolm, but she testified to a precarious moment when he once leaned in towards her face while holding her from behind in a "spooning" position.  The situation made her feel uncomfortable, so she pulled away from him.  According to her trial testimony, Malcolm later admitted that he had almost kissed her.  He also boasted about being a good kisser and offered to be her first kiss.

After passing the California High School Proficiency Exam, Victim Two elected to forgo her junior and senior years of high school.  Her communications with Malcolm tapered off at that point, but she maintained occasional contact with him from Fall 2008 through January 2009.  She testified that during this time period Malcolm told her he was exchanging text messages with one of his current students, Victim Three, and expressed his willingness to have a physical romantic relationship with Victim Three if the opportunity arose.  Victim Two urged Malcolm to discontinue all extracurricular contact with Victim Three because she believed "his intentions with her were going to lead to bad places."

Victim Three took courses taught by Malcolm throughout all four years of high school.  The two developed a personal relationship of sorts during her senior year, starting around November 2008.  She was 17 years old during the time period relevant to Counts 8 and 9.

5.

With Victim Three, an initial exchange of seemingly innocuous text messages quickly transitioned to a series of sexually charged conversations. Malcolm asked her if she was a virgin, if she had ever masturbated, and if so, what types of positions and techniques she used to stimulate herself. Her trial testimony described two occasions where Malcolm claimed to be masturbating on his end of the line, so to speak, as they texted back and forth with each other. In one of these instances, Malcolm requested that Victim Three send him a picture "to help the situation along." She responded by transmitting a photograph of herself wearing only a brassiere and a pair of pants. Malcolm later informed her that he had brought himself to climax and, with her permission, transmitted back a photograph of ejaculate-stained bed sheets. Victim Three received the message on her mobile phone but was unable to open the attached image. She encountered this problem again when Malcolm attempted to send her another photograph of his ejaculate on a different set of sheets. He eventually sent the pictures to her via e-mail, and she was able to view them on her home computer. The images were admitted into evidence at trial.

In addition to discussing masturbation, Malcolm solicited Victim Three's opinions regarding his physical appearance and asked her if she would consider sleeping with him. Victim Three replied that she would not sleep with him because he was her teacher, a married man, and well outside of her preferred age group. Despite her stated position on the matter, Malcolm sent Victim Three text messages which described how he would perform oral copulation and intercourse with her if she decided to lose her virginity to him.

In January 2009, Victim Three confided in a classmate about her private interactions with Malcolm. The classmate claimed to have her own first-hand knowledge of Malcolm's penchant for sexual discourse, and took it upon herself to report Victim Three's experience to school officials, who in turn alerted the police. Malcolm was arrested following an investigation into the students' allegations.

During a subsequent custodial interview, Malcolm waived his *Miranda*[2] rights and confessed to certain misbehavior with Victim Three, including the transmission of images depicting his bodily fluids. Upon further questioning by the investigators, who were not fully aware of his prior misconduct at the start of the interview, Malcolm admitted that he had exchanged illicit text messages with Victim Two and carried on a sexual relationship with Victim One while she was still a minor. The videotaped confession was shown to the jury.

Defense Case

Malcolm testified on his own behalf at trial. He acknowledged his affair with Victim One and admitted the acts of unlawful sexual conduct alleged in Counts 1 through 7. Nevertheless, he claimed to have had only platonic intentions towards Victim One while she was his student and TA. The prospect of a romantic liaison supposedly never crossed his mind until after she had already graduated.

As for Victims Two and Three, Malcolm admitted his transgressive behavior towards them, but insisted that he never intended for the inappropriate communications to result in sexual encounters. The affair with Victim One allegedly left him so guilt stricken that he had resolved to never again be (physically) unfaithful to his wife. He denied making contrary statements to Victim Two concerning his intentions towards Victim Three.

Following his arrest, Malcolm and his wife participated in a series of counseling sessions with a clinical psychologist named Allan Hedberg, Ph.D. Based on his personal evaluation of the defendant, Dr. Hedberg was of the opinion that Malcolm did not fit the profile of a sexual predator. Dr. Hedberg further testified to his belief that Malcolm's actions with Victims Two and Three were not performed with the intent or purpose of seducing the girls.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436, 478-479.

7.

<u>Verdict and Sentencing</u>

Malcolm was found guilty on all counts. The trial court imposed a total prison term of seven years and four months, in addition to various fines, fees, and sex offender registration requirements. Additional facts relevant to the sentencing issues raised on appeal are discussed later in the opinion.

## DISCUSSION

**Former § 288.2**

Malcolm was convicted in Counts 8 through 13 under a former version of section 288.2 which provided, in pertinent part:

> (a) Every person who, with knowledge that a person is a minor, … knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by any means, including, but not limited to, live or recorded telephone messages, any harmful matter, as defined in Section 313, to a minor with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of a minor, and with the intent or for the purpose of seducing a minor, is guilty of a public offense and shall be punished by imprisonment.…

> (b) Every person who, with knowledge that a person is a minor, knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by electronic mail, the Internet, as defined in Section 17538 of the Business and Professions Code, or a commercial online service, any harmful matter, as defined in Section 313, to a minor with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of a minor, and with the intent, or for the purpose of seducing a minor, is guilty of a public offense and shall be punished by imprisonment.…
>
> (Stats. 1997, ch. 590, § 1; see Stats. 2011, ch. 15, § 317.)

In 2014, former section 288.2 was repealed and reenacted in a similar form. (Stats. 2013, ch. 777, §§ 1, 2.)  The current version of the statute consolidates the elements of the offense into one provision and no longer contains the phrase "seducing a minor."  (§ 288.2, subd. (a)(1).)  The law now expressly requires that a defendant act with the intent to "engag[e] in sexual intercourse, sodomy, or oral copulation with the other person, or with the intent that either person touch an intimate body part of the other…."[3] (*Ibid*.)

In the current and former versions of section 288.2, "harmful matter" is defined as "matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors."  (§ 313, subd. (a).) Malcolm does not deny he sent harmful matter to Victims Two and Three, but argues that

---

[3] The full text of section 288.2, subdivision (a) provides: "(1) Every person who knows, should have known, or believes that another person is a minor, and who knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by any means, including by physical delivery, telephone, electronic communication, or in person, any harmful matter that depicts a minor or minors engaging in sexual conduct, to the other person with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the minor, and with the intent or for the purposes of engaging in sexual intercourse, sodomy, or oral copulation with the other person, or with the intent that either person touch an intimate body part of the other, is guilty of a misdemeanor, punishable by imprisonment in a county jail not exceeding one year, or is guilty of a felony, punishable by imprisonment in the state prison for two, three, or five years. [¶] (2) If the matter used by the person is harmful matter but does not include a depiction or depictions of a minor or minors engaged in sexual conduct, the offense is punishable by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison for 16 months, or two or three years. [¶] (3) For purposes of this subdivision, the offense described in paragraph (2) shall include all of the elements described in paragraph (1), except as to the element modified in paragraph (2)."

former section 288.2 was unconstitutionally vague in its failure to explain what it means to have the intent or purpose of seducing a minor. We are not so persuaded.

Questions of statutory construction and interpretation are reviewed de novo. (*People v. Health Laboratories of North America, Inc*. (2001) 87 Cal.App.4th 442, 445.) "'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity.'" (*Personal Watercraft Coalition v. Marin County Bd. of Supervisors* (2002) 100 Cal.App.4th 129, 137, quoting *Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 484.) The presumption of validity prevails if there is a reasonable degree of certainty in the text of the challenged provisions. (*People v. Heitzman* (1994) 9 Cal.4th 189, 199.) "'[A] penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" (*Ibid*., quoting *Kolender v. Lawson* (1983) 461 U.S. 352, 357.)

In *People v. Hsu* (2000) 82 Cal.App.4th 976 (*Hsu*), the First District Court of Appeal upheld the constitutionality of former section 288.2 in the face of a vagueness challenge regarding the concept of seduction. The appellate court concluded that insofar as some dictionaries may indicate the word "seduce" alternatively means "to lead astray" or to "persuad[e] into partnership in sexual intercourse," a person of ordinary intelligence would readily understand that the latter definition applies in the context of the statute. (*Hsu*, *supra*, 82 Cal.App.4th at p. 992.) The Sixth District agreed with this conclusion in *People v. Jensen* (2003) 114 Cal.App.4th 224 (*Jensen*), and went on to hold that the "'seducing' intent element of the offense requires that the perpetrator intend to entice the minor to engage in a sexual act involving physical contact between the perpetrator and the minor." (*Jensen*, *supra*, 114 Cal.App.4th at pp. 239-240).

Considering *Hsu* and *Jensen* were published in 2000 and 2003, respectively, the legal definition of seduction, as contemplated by former section 288.2, was well

10.

established by the time Malcolm engaged in the activity for which he was prosecuted. Both opinions reason that the statute's accompanying intent requirement of "arousing, appealing to, or gratifying the lust or passions or sexual desires" of the perpetrator or the victim provides a reasonable degree of certainty as to the meaning of the words "seducing a minor." (*Jensen*, *supra*, 114 Cal.App.4th at p. 239; *Hsu*, *supra*, 82 Cal.App.4th at p. 992.) We are inclined to agree with this analysis and find no reason to depart from existing precedent on the constitutionality of the former law.

In a separate claim involving statutory interpretation, Malcolm argues that subdivision (a) of former section 288.2 did not prohibit the conduct upon which his convictions under Counts 8 and 9 were based. He presumes the jury's verdict rested on his acts of e-mailing harmful matter to Victim Three, and asserts that such behavior could have only been prosecuted under subdivision (b) of the statute. A similar argument was considered and rejected by the Fourth District in *Hatch v. Superior Court* (2000) 80 Cal.App.4th 170 (*Hatch*), where the appellant claimed that references to the Internet and electronic mail in subdivision (b) necessarily meant that such means of communication were excluded from the scope of an earlier version of the statute containing the same wording as subdivision (a) in terms of the distribution or exhibition of harmful matter "by any means." (*Hatch*, *supra*, 80 Cal.App.4th at pp. 204-205.) Malcolm recognizes the precedential import of *Hatch*, but believes the case was wrongly decided.

Regardless of the holding in *Hatch, supra*, 80 Cal.App.4th at p. 205 ("'any means' means 'any means,' and thus necessarily *does* include usage of the Internet to affect the prohibited acts"), Malcolm's argument fails to account for the fact that he admittedly sent photographs of his bodily fluids to Victim Three by way of phone-to-phone messaging before transmitting the images to her over e-mail. The initial method of delivery did not fall within subdivision (b)'s limited application to the use of "electronic mail," "the Internet," or "a commercial online service," but was certainly subject to subdivision (a)'s

11.

broadly worded proscription against the dissemination of harmful matter "*by any means*, including*, but not limited to*, live or recorded telephone messages…." (Italics added.) We therefore reject Malcolm's claim that he was erroneously convicted of Counts 8 and 9 under former section 288.2, subdivision (a) because that particular provision did not apply to his actions.

**Jury Instructions**

Background

The jury below was instructed on the elements of former section 288.2, subdivision (a) with CALCRIM No. 1140 and a specially prepared jury instruction that was modified by the trial court from a version drafted by Malcolm's trial counsel. The CALCRIM pattern instruction explained that "[t]o seduce a minor means to entice the minor to engage in a sexual act involving physical contact between the seducer and the minor." The special jury instruction advised: "'Physical contact' refers to any contact involving the seducer's genitals, the minor's genitals[,] or both. Enticing a minor to masturbate herself does not satisfy the 'intent to seduce.' [¶] You cannot find the defendant guilty unless you find the defendant's 'intent to seduce' was present at the time he sent the material to the recipient."

Defense counsel had originally requested that the special jury instruction include the following statements: "'Physical contact' refers to 'intercourse involving genital contact between individuals'" and "You cannot find that the defendant had the 'intent to seduce,' if you find that the defendant's intent was to engage in physical contact after the recipient had reached the age of majority – and thus was over the age of 18 and no longer a minor." The trial court refused to include the word "intercourse" in the final version of the instruction out of concern that jurors would be misled to believe the offense exclusively required intentions of genital-to-genital contact as opposed to other forms of sexual touching (e.g., oral copulation). It also ruled that the language regarding a defendant's intent to engage in sexual activity only after the child has reached the age of

12.

majority was not an accurate statement of law and "would clearly mislead the jury." Malcolm claims these rulings were erroneous.

<u>Analysis</u>

A trial court is required to instruct jurors on general principles of law relevant to the issues raised by the evidence. (*People v. Valdez* (2004) 32 Cal.4th 73, 115.) Defendants are further entitled, upon request, to instructions that pinpoint the theory of the defense case. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1142.) However, the court "may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation]." (*People v. Moon* (2005) 37 Cal.4th 1, 30.) "[W]here standard instructions fully and adequately advise the jury upon a particular issue, a pinpoint instruction on that point is properly refused." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 857.) We review claims of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

The language in CALCRIM No. 1140 regarding the intent to seduce a minor is derived from the holding in *Jensen*, *supra*, and closely mirrors the words used in that opinion to define this particular element of the offense. (Judicial Council of Cal., Crim. Jury Instns. (2014) Authority for CALCRIM No. 1140, p. 997; *Jensen*, *supra*, 114 Cal.App.4th at pp. 239-240.) Thus, the standard instructions that were given to the jury in this case fully and adequately defined the phrase "seducing a minor" for purposes of former section 288.2. (*Jensen, supra,* 114 Cal.App.4th at pp. 239-240; see *People v. Nakai* (2010) 183 Cal.App.4th 499, 508-510 [applying the *Jensen* definition in analysis of alleged instructional error on charges under former § 288.2, subd. (a)].) It follows that the trial court was under no obligation to supplement the pattern instruction with the language proposed by Malcolm. In any event, we agree that adding the word "intercourse" to the special jury instruction would have carried a significant risk of confusing and/or misleading the jury.

13.

The language regarding a defendant's intent to seduce the minor but delay sexual activity until he or she reaches the age of majority is not supported by the text of the statute or any of the case law cited in appellant's briefs. This component of the proposed instruction was argumentative and, moreover, antithetical to the defense presented at trial. Malcolm specifically testified that he did not intend to have sexual relations with Victims Two or Three under any circumstances, even if they were over the age of 18. Therefore, the proposed instruction did not actually pinpoint a theory of the defense case, which alone justifies the trial court's decision not to allow it.

**Sufficiency of the Evidence**

Malcolm twice moved for a judgment of acquittal (§ 1118.1) as to Counts 8 through 13 on grounds that the prosecution failed to present sufficient evidence of his intent to seduce Victims Two and Three. Both motions were denied. On appeal, he again alleges there was insufficient evidence to support his convictions under former section 288.2, subdivision (a). Malcolm's arguments are, in essence, an attempt to relitigate the disputed issues of fact that were resolved against him by the jury, with an emphasis on his subjective interpretations of the evidence. He underscores his own denials on the witness stand, the opinions of his retained expert, and certain testimony by Victims Two and Three wherein they conceded that at the time of the subject events they did not personally believe Malcolm was trying to seduce them.

"In resolving claims involving the sufficiency of evidence, a reviewing court must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Marshall* (1997) 15 Cal.4th 1, 34.) Each element of the offense must be supported by substantial evidence. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 89; *People v. Misa* (2006) 140 Cal.App.4th 837, 842.) Evidence is substantial only if it "reasonably inspires confidence" and is of credible and solid value. (*People v. Raley* (1992) 2 Cal.4th 870, 891.)

14.

Reversal is not warranted unless the evidence is insufficient to support the verdict under any hypothesis. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) The appellate court cannot reweigh the evidence, reinterpret the evidence, or substitute its judgment for that of the jury. (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.) The same standard of review applies in cases such as this one where the prosecution relies primarily on circumstantial evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

"Intent is rarely susceptible of direct proof and must usually be inferred from a consideration of all the facts and circumstances shown by the evidence." (*People v. Pitts* (1990) 223 Cal.App.3d 606, 888.) This is especially true where the alleged objective is seduction, which by its very nature will often involve incremental and nuanced forms of persuasion. The jury in this case was called upon to consider the entirety of Malcolm's actions and find some kind of explanation for his conduct towards Victims Two and Three. It was their province to weigh the significance of his distinct and repetitious pattern of behavior with three different girls and decide whether he intended for his relationships with Victims Two and Three to follow the same trajectory towards sexual contact that he achieved with Victim One. Although Malcolm denied harboring such an intent, the evidence supported reasonable inferences of a plan to pique the girls' sexual curiosity and entice them to act out in person with him the same forms of physical intimacy which they had so thoroughly discussed over the phone and in writing. Particularly damaging to his case was the testimony of Victim Two regarding the overtures about her lips and stomach; the offer to be Victim Two's first kiss; his alleged admissions to Victim Two about being open to having a physical relationship with Victim Three; his questions to Victim Three regarding her willingness to sleep with him; and the text messages he sent to Victim Three describing the manner in which he would take her virginity if such an encounter ever occurred. The sufficiency of the evidence is manifest.

15.

**Denial of Probation**

At the time of sentencing, Malcolm asked the trial court to consider ordering felony probation with a suspended term of incarceration. In its denial of the request, the trial court made a lengthy record of all the reasons why it felt Malcolm was not a suitable candidate for probation. Among those considerations were the serious nature of the crimes he had committed while holding a position of trust and authority over his victims, the facts which showed planning, sophistication, and his "predatory and grooming instincts on minors," and the court's belief that despite having no prior criminal convictions, Malcolm's freedom would pose a danger to members of the community.

While setting forth the basis for its ruling, the court stated on two occasions that Malcolm was statutorily ineligible for probation "unless the mandates of [section] 1203.067 are met." The statute to which the court referred contains a list of prerequisites that must be satisfied before probation can be granted to a defendant who has been convicted of certain sex crimes, including sections 288a and 289 (i.e., Counts 1-7). (§ 1203.067, subd. (a).) Among those requirements is the completion of a court-ordered evaluation at a diagnostic facility of the Department of Corrections or a similar assessment by the county probation department. (*Id*., subd. (a)(1); see § 1203.03.) Section 1203.067 does not apply to persons convicted of violating section 288.2; such individuals are eligible for probation subject to the discretion of the trial court. (See §§ 1203, subd. (e), 1203.03, subd. (a); Cal. Rules of Court, rule 4.414.[4])

Malcolm contends that the trial court failed to consider his suitability for probation under the criteria set forth in rule 4.414 and abused its discretion by denying probation without giving him the opportunity to satisfy the prerequisites of section 1203.067. We find no merit in these claims.

---

[4] Subsequent references to rules are to the California Rules of Court.

"'The trial court enjoys broad discretion in determining whether a defendant is suitable for probation.' [Citation.] 'To establish abuse, the defendant must show that, under the circumstances, the denial of probation was arbitrary or capricious. [Citations.] A decision denying probation will be reversed only on a showing of abuse of discretion.'" *(People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1530 (*Ramirez*).)

Malcolm's argument that the trial court failed to properly consider his suitability for probation using the criteria in rule 4.414 belies the clear evidence to the contrary in the reporter's transcript. Our summary of the reasons given by the court for denying probation shows that its decision was based in part upon the factors enumerated in rule 4.414 (a)(1), (8), and (9), as well as (b)(1) and (8). The court further acknowledged its consideration of the probation officer's report, victim impact statements, letters of support provided by Malcolm's family members, sentencing memoranda submitted by defense counsel, and, pursuant to rules 4.421 and 4.423, the possibility of other circumstances in aggravation and mitigation.

It is not entirely clear why the court felt compelled to reference section 1203.067, but the record sufficiently indicates that it understood the scope of its sentencing discretion and exercised that discretion in a reasoned manner. Malcolm is in no position to complain that he was denied the opportunity to comply with the requirements of section 1203.067, because such compliance is necessary "only if, after weighing the criteria listed in rule 4.414, a court is inclined to order probation rather than prison time." (*Ramirez*, *supra*, 143 Cal.App.4th at p. 1532.) "When the court has no intention of granting probation, and the record adequately supports such a determination, there is no need for a section 1203.067 diagnostic evaluation." (*Ibid*.) Malcolm has failed to carry his burden to show the denial of probation was arbitrary, irrational, or otherwise erroneous.

17.

**Term of Imprisonment**

During the oral pronouncement of judgment, the trial court sentenced Malcolm to prison and decreed, "The aggregate term of incarceration is seven years, four months." However, its count-by-count recital of the imposed terms for each conviction, which included a variety of concurrent and consecutive sentences, added up to only four years. When the prosecutor brought this discrepancy to the court's attention, the judge corrected his prior statements for the record so as to bring the intended aggregate term and the count-by-count calculations into unison.[5]

Malcolm claims that the trial court "acted in excess of its jurisdiction" by "increasing" the length of his sentence because the attempt to correct its earlier statements was not made until after it had ordered that he be remanded into custody. We disagree with these characterizations and the premise upon which his argument is based. Malcolm relies on the common law rule that a trial court loses jurisdiction to resentence a criminal defendant after it relinquishes custody of the individual and the execution of his or her sentence has commenced. (*People v. Karaman* (1992) 4 Cal.4th 335, 344.) Once the sentence has been formally entered in the minutes, the court's power to modify same is restricted; it retains the power to mitigate a defendant's prison term prior to execution, but lacks the authority to increase it. (*Id*. at pp. 344-345, 350; *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1423-1424.) In this instance, however, the trial court made it clear that Malcolm would be required to serve an aggregate term of seven years and four

---

**5** The court indicated that Malcolm would be committed to prison for the middle term of two years as to Counts 1, 11, 12, and 13, and one-third of the middle term (8 months) as to Counts 2 through 10, with all time to be served concurrent to the sentence under Count 1 except for those terms imposed for Counts 7, 8, and 10. After realizing its mistake, the court clarified that Malcolm's sentence consisted of the middle term of two years for each conviction under Counts 1, 3, 4, 5, and 6, and one-third of the middle term (8 months) as to Counts 2, 7, 8, 9, 10, 11, 12, and 13, with all time to be served consecutively except for the sentences imposed for Counts 3-6.

months in prison, and did so prior to ordering that he be remanded into custody. Also, the changes in question occurred before Malcolm's sentence was recorded in the clerk's minutes. The trial court did not attempt to "resentence" the defendant, but rather corrected the record to reflect its previously stated intentions. We thus conclude that the sentence was authorized.

Finally, Malcolm asserts that the trial court violated section 654 by ordering the terms imposed under Counts 8 through 13 to be served consecutively. Section 654 prohibits multiple punishments for separate crimes arising out of a single occurrence when all of the offenses are incident to a lone objective. (*People v. Cowan* (2010) 50 Cal.4th 401, 498; *People v. Hester* (2000) 22 Cal.4th 290, 294.) Malcolm may have entertained the singular intent to seduce Victims Two and Three, but his distribution of harmful matter occurred in different ways, on multiple occasions, and over long periods of time. He fails to explain how section 654 might possibly apply to the facts of this case, and we conclude that it does not.

## **DISPOSITION**

The judgment is affirmed.

_____
Gomes, J.

WE CONCUR:


_____
Cornell, Acting P.J.



_____
Franson, J.

19.